# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISON

| | |
|---|---|
| AMANDA MORENO, D.O.,<br><br>Plaintiff,<br><br>v.<br><br>MAHASKA HEALTH PARTNERSHIP; MAHASKA COUNTY, IOWA; KEVIN DERONDE; DAVID CORNELDER; TIMOTHY BREON; DAVID LANGKAMP; AMBER COFFEY; GREG GORDY; and MARSHA RIORDAN,<br><br>Defendants. | CASE No.<br><br>**COMPLAINT**<br>**AND JURY DEMAND** |

COMES NOW Plaintiff Amanda Moreno, D.O., by and through counsel, and for her causes of action against Mahaska Health Partnership, Mahaska County, Iowa, Kevin DeRonde, David Cornelder, Timothy Breon, David Langkamp, Amber Coffey, Greg Gordy, and Marsha Riordan states as follows:

## INTRODUCTION

1. This is an action under and pursuant to the Iowa Civil Rights Act ("ICRA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and 42 U.S.C .1983.

2. Under both ICRA and Title VII, Plaintiff is protected from discriminatory practices based on her sex and religion as well as against retaliation for opposing discriminatory conduct. Plaintiff is also protected against discriminatory practices based on her sex under the Equal Protection Clause of the United States Constitution.

## PROCEDURAL REQUIREMENTS

3. Plaintiff Moreno filed her first sex and religion discrimination complaint, and

1

complaint of retaliation, with the Iowa Civil Rights Commission on February 23, 2022, within the 300-day limitations period from the last discriminatory act alleged.

4. On January 18, 2023, less than ninety days prior to the filing of this Complaint, the Iowa Civil Rights Commission issued a Right to Sue Letter.

5. On March 7, 2023, less than ninety days prior to the filing of this Complaint, the U.S. Equal Employment Opportunity Commission issued a Right to Sue Letter.

6. Plaintiff Moreno filed a second complaint alleging further retaliation with the Iowa Civil Rights Commission on January 9, 2023, within the 300-day limitations period from the last discriminatory act alleged.

7. On March 30, 2023, less than ninety days prior to the filing of this Complaint, the Iowa Civil Rights Commission issued a Right to Sue Letter on Plaintiff's second Complaint.

8. On April 4, 2023, less than ninety days prior to the filing of this Complaint, the U.S. Equal Employment Opportunity Commission issued a Right to Sue Letter on Plaintiff's second Complaint.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 U.S.C. § 1331 as this is a civil action arising under federal law and pendent jurisdiction of the state claims under 28 U.S.C. § 1367.

10. Venue in the Southern District Court in Iowa is proper under 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to this claim occurred in Mahaska County, Iowa.

11. The unlawful acts of which Plaintiff complains occurred in Mahaska County, Iowa.

**PARTIES**

12. Plaintiff Amanda Moreno, D.O. is female and an atheist, and all times material hereto, was a citizen and resident of Polk County, Iowa.

13. At all times material hereto, Defendant Mahaska Health Partnership (hereafter, "MHP") was/is a county hospital organized and existing under the laws of the State of Iowa, with its principal place of business in Oskaloosa, Mahaska County, Iowa. Defendant MHP is governed by a Board of Trustees elected from the surrounding county.

14. At all times material hereto, Defendant David Cornelder, D.O. was/is a citizen and resident of Polk and was employed by Defendant MHP as an Emergency Room Physician and Medical Director.

15. At all times material hereto, Defendant Timothy Breon, M.D. was/is a citizen and resident of Mahaska County, Iowa and the Chief Medical Officer of Defendant MHP.

16. At all times material hereto, Defendant Kevin DeRonde was a citizen and resident of Mahaska County, Iowa and the Chief Executive Officer of Defendant MHP.

17. At all times material hereto, Defendant David Langkamp was/is a citizen and resident of Mahaska County, Iowa and served as the President of the Mahaska Health Board of Trustees.

18. At all times material hereto, Defendant Amber Coffey was/is a citizen and resident of Mahaska County, Iowa and served as a Board Member of the Mahaska Health Board of Trustees.

19. At all times material hereto, Defendant Greg Gordy was/is a citizen and resident of Mahaska County, Iowa and served as a Board Member of the Mahaska Health Board of Trustees.

20. At all times material hereto, Defendant Marsha Riordan was/is a citizen and resident of Mahaska County, Iowa and served as the Vice-President of the Mahaska Health Board of Trustees.

21. Under the doctrine of *respondeat superior*, Defendant MHP is legally liable for any damages caused to Plaintiff by the conduct of Defendants DeRonde, Cornelder, Breon, Langkamp, Coffey, Gordy, and/or Riordan, or in the alternative, under the principles of ostensible agency, Defendant MHP is legally liable for any damages caused to Plaintiff by the conduct of Defendants DeRonde, Cornelder, Breon, Langkamp, Coffey, Gordy, and/or Riordan.

22. Under the doctrine of *respondeat superior*, Defendant Mahaska County is legally liable for any damages caused to Plaintiff by the conduct of Defendants Langkamp, Coffey, Gordy, and/or Riordan, or in the alternative, under the principles of ostensible agency, Defendant Mahaska County is legally liable for any damages caused to Plaintiff by the conduct of Defendants Langkamp, Coffey, Gordy, and/or Riordan.

**FACTUAL BACKGROUND**

23. Plaintiff Moreno began working for Defendant MHP in February 2013 as an emergency room physician.

24. Plaintiff worked for Defendant MHP for eight years and maintained her position as an emergency room physician throughout her tenure.

25. Defendant MHP, and its administration including Defendants Breon, DeRonde, and Cornelder, have a history of taking discriminatory acts against female employees and those that do not share their religious faith and political views. Their goal was to replace the current female employees with male employees who share their religious beliefs and political opinions.

26. Defendant DeRonde was appointed CEO of Defendant MHP in February 2018.

27. In 2019, Dr. Amy Montgomery, then currently serving as the director of the emergency department, resigned during the negotiations to renew her contract with Defendant MHP after Defendant MHP failed to negotiate in good faith. During this period, Defendant DeRonde began manufacturing complaints about Dr. Montgomery's work performance with the goal of undermining her contract negotiations.

28. In March of 2020, Defendant MHP hired Defendant David Cornelder with the intent to "provide some leadership" and "fix" the Emergency Medicine Department.

29. Prior to Defendant Cornelder's hiring to "fix" the department, Plaintiff Moreno was unaware of any concerns the administration had with the emergency department.

30. After witnessing how Defendant MHP, in approximately May or June of 2021, Plaintiff twice asked Defendants DeRonde and Breon for a performance evaluation and was denied.

31. Plaintiff Moreno made this request because she wanted to be made aware of any perceived deficiencies in her work as well as receive feedback regarding things that were going well with her performance and the department.

32. Both Defendants Breon and DeRonde refused to provide Plaintiff with a formal performance evaluation even though Plaintiff's contract called for an annual performance evaluation.

33. In October 2021, the Emergency Medicine Department at Defendant MHP had five physicians: Suzy Roefer, DO (female), Deborah Nielsen-DeJong, MD (female), Kymberly Life, DO (female), Plaintiff Moreno (female), and the recently hired Defendant Cornelder, DO (male).

34. On October 1, 2021, Plaintiff, along with Drs. Nielsen-DeJong and Life, received

termination notices from Defendant MHP stating that their employment contract would end on December 31, 2021.

35. Dr. Roefer was already planning on retiring and was railroaded into declaring a firm retirement date in February 2022.

36. Defendant Cornelder, the most recently hired and the sole male physician, did not receive a termination notice.

37. While Plaintiff was offered a severance package, it was drastically inferior to what Drs. Nielsen-DeJong and Life were offered.

38. Once Plaintiff learned of her forthcoming termination, she opposed it by seeking out legal counsel and contacting the Iowa Freedom of Information Council to obtain Defendant MHP Board of Trustee meeting minutes.

39. In November 2021, Plaintiff was unfairly and unlawfully suspended from her duties to provide further (false) reasons for terminating Plaintiff's contract. Prior to this, Plaintiff had never before been disciplined.

40. Defendant Breon has also driven away most of the female Certified Registered Nurse Anesthetists.

41. In Plaintiff and the other female physicians' place, Defendants MHP, Cornelder, Breon, and DeRonde hired a male general surgeon (Dr. Chris Martin) without emergency room experience.

42. Plaintiff and others warned Defendants Breon and DeRonde that Defendant Martin was unqualified to be an emergency room physician and posed a serious danger to patients.

43. When Defendant MHP and its administration interviewed Dr. Martin, Plaintiff

and others were not aware he would be replacing them. Rather, Plaintiff and others were told that Defendant MHP were just looking for someone to replace Dr. Suzy Roefer when she retired.

44. Defendants Breon and Martin originally wanted to pay Dr. Martin *more* than his female physician colleagues but was warned against doing so by Defendant MHP's Human Resources department.

45. Plaintiff made her concerns known to Defendant DeRonde that Dr. Martin was not qualified to serve in an emergency room position. Defendant DeRonde ignored Plaintiff, and then attacked her work performance based on apparent deficiencies Defendant Cornelder noted in Plaintiff's work, and which Defendant Cornelder had never previously discussed with Plaintiff.

46. Prior to Defendant DeRonde informing Defendant MHP's Board of Trustees, including Defendants Langkamp, Riordan, Gordy, and Coffey, of the termination or retirement of Drs. Roefer, Nielsen-DeJong, Life, and Plaintiff Moreno, he had already obtained contracts to replace them.

47. Defendants Langkamp, Riordan, Gordy, and Coffey accepted Defendant DeRonde's discriminatory treatment of Plaintiff and the other female emergency room physicians.

48. After community backlash for the terminations, Defendant MHP's Board of Trustee's, including Defendants Langkamp, Riordan, Gordy, and Coffey, called Defendant DeRonde before them to explain why there was a mass firing of female emergency room physicians and why new hires did not seem to have the appropriate qualifications for their jobs. Defendant DeRonde then submitted his resignation, and the Board accepted it. There were also concerns raised that Defendant DeRonde having an intimate relationship with another employee

7

and hiring his wife for a position that she was not qualified for.

49. A petition to reinstate Defendant DeRonde was circulated, a campaign pushed by Defendants Breon and Langkamp, and Defendants Langkamp, Coffey, Gordy, and Riordan voted to reinstate Defendant DeRonde as CEO despite his discriminatory conduct.

50. Three Board of Trustee members, Jim Hansen, Margaret Ratcliff, and Amy McGriff submitted their resignations in light of Defendant DeRonde's reinstatement.

51. In her resignation letter, Ratcliff expressed concerns regarding unethical practices that were not in the best interests of Defendant MHP.

52. Hansen's resignation letter mirrored Ratcliff's concerns and discussed unfair and irresponsible hiring and termination practices of Defendant MHP and its leadership team.

53. McGriff's resignation letter mentioned the uncovering of disturbing abuses within the organization.

54. All three resignation letters reminded Defendants to bear in mind that MHP is a public hospital and an Equal Opportunity Employer, therefore employers should be treated fairly, and procedures and policies must be followed.

55. Defendants DeRonde and Breon often spoke about religion and pushed their religious ideas and practices onto employees. Their religious beliefs informed their political ideology.

56. They would "testify" at executive team member meetings and speak with employees and patients about religion. During one of the meetings, these Defendants told the entire executive team that they were chosen by the hand of God to lead the hospital.

57. Defendant Breon once requested that Chief Human Resources Officer Sara Dickey share her "testimony" with him. She expressed that the conversation would be

inappropriate for work, but he continued to share his own "testimony" with her.

58. Defendant Breon has insisted on praying with patients, two of whom complained to Plaintiff Moreno.

59. At a leadership meeting, these Defendants created a PowerPoint presentation about why the attending members needed to vote for Donald Trump, a political partisan consistent with their religious beliefs.

60. Following Plaintiff's termination, Defendants have retaliated against her by criticizing her work to potential employers.

61. In October 2022, Plaintiff Moreno applied for an open position at Madison County Memorial Hospital. She was interviewed for the position but was not hired. She was told that individuals at Defendant Mahaska made comments that were "concerning" which made Madison County Memorial Hospital "uncomfortable" with hiring her.

62. Following an interview with Curana Health, Plaintiff Moreno received a text message from Dr. Brian Whyms stating, "DONs and Administrators...brought up some negative experiences they had with you in the past.''

63. Defendants have made unjustifiable criticism of Plaintiff's work performance.

64. Plaintiff Moreno has been harassed, belittled, reprimanded, humiliated, excluded, terminated, and retaliated against all because she is a woman and she is atheist.

**COUNT I – DISCRIMINATION ON THE BASIS OF SEX AND RELIGION AND RETATALIATION IN VIOLATION OF IOWA CODE CHAPTER 216 AGAINST ALL DEFENDANTS**

65. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 – 64, above.

66. Plaintiff Moreno is a female and atheist and is a member of protected classes

under the Iowa Civil Rights Act, Iowa Code Chapter 216.

67. Defendants discriminated against Plaintiff Moreno with respect to the terms and conditions of her employment based on her sex and religion (or lack thereof) in violation of Iowa Code Chapter 216, as set forth above.

68. Defendants engaged in a continuing pattern and practice of sex and religious discrimination in violation of the Iowa Civil Rights Act, Iowa Code Section 216.6.

69. Plaintiff Moreno's sex and religion (or lack thereof) were motivating factors in the discrimination.

70. Defendants discriminated against Plaintiff Moreno and other female employees, as set forth above, in violation of Iowa Code Section 216.6.

71. Plaintiff Moreno opposed and otherwise complained about this discrimination.

72. Defendants retaliated against Plaintiff Moreno by further discriminating against her, disciplining her, terminating her, and interfering with her ability to obtain new employment.

73. Plaintiff Moreno's complaints of sex and religion discrimination were a motivating factor in Defendants' retaliation against her.

74. The Defendants' violations of Iowa Code Chapter 216 are the cause of Plaintiff Moreno's injuries.

75. As a result of the Defendants' actions, Plaintiff Moreno has suffered, and will continue to suffer, past and future loss of wages, benefits, and other emoluments of employment, past and future mental and emotional harm and anguish, anxiety, fear, loss of enjoyment of life, and other damages.

WHEREFORE, Plaintiff Moreno prays for the following relief:

a) That Defendants' conduct be declared to be in violation of Plaintiff's rights as outlined by

Iowa Code Chapter 216;

b) That Defendants and their employees, agents, attorneys, successors and assigns, and those acting in concert therewith be enjoined from any conduct violating Plaintiff's rights or the rights of others similarly situated as secured by Chapter 216 of the Iowa Code, and that the Court order such other injunctive relief as necessary to prevent Defendants from continuing their discriminatory practices and to protect others similarly situated;

c) That Plaintiff be awarded compensatory damages;

d) That Plaintiff be made whole by providing her compensation for the past and future mental and emotional harm and anguish, and other affirmative relief;

e) That Plaintiff be awarded reasonable attorneys' fees and costs incurred in prosecuting this action; and

f) That Plaintiff be awarded such additional and further relief as is just and proper.

### COUNT II – SEX AND RELIGION DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AGAINST ALL DEFENDANTS

76. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 – 64, above.

77. Section 703(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee because of such individual's religion or sex.

78. Plaintiff Moreno experienced discrimination on the basis of her sex and religion as set forth above.

79. Plaintiff's sex and religion (or lack thereof) was a motivating factor in the discrimination.

80. Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits

employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter."

81. Plaintiff Moreno complained about sex and religion discrimination she experienced and otherwise opposed practices made unlawful by Title VII of the 1964 Civil Rights Act as set forth above.

82. Defendants, their agents, and/or employees retaliated against Plaintiff Moreno because of her sex and religion and because of her complaints opposing discrimination.

83. The Defendants' violations of Title VII of the 1964 Civil Rights Act are the cause of Plaintiff Moreno's injuries.

84. As a result of the Defendants' actions, Plaintiff Moreno has suffered, and will continue to suffer, past and future loss of wages, benefits, and other emoluments of employment, past and future mental and emotional harm and anguish, anxiety, fear, loss of enjoyment of life, and other damages.

85. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff Moreno demands judgment against Defendants in an amount which will fully and fairly compensate her for her injuries and damages, for punitive damages in an amount sufficient to punish Defendants and to deter them and others from similar conduct in the future, for prejudgment and post judgment interest, for attorney's fees and expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Title VII of the 1964 Civil Rights Act.

**COUNT III – VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION
AGAINST ALL DEFENDANTS**

86. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 – 64 above.

87. Defendants intentionally discriminated against Plaintiff because of her sex, as set forth above.

88. Defendants are state actors for purposes of 42 U.S.C. 1983, and their actions, outlined above, were taken under the color of state law.

89. Defendants, through their agents, servants, and employees in their official capacities, established a policy, regulation, official decision, custom, or usage of reckless or deliberate indifference to the rights of Plaintiff.

90. Defendants established, maintained, and enforced policies, regulations, official decisions, or usages which unconstitutionally deprived Plaintiff of her rights guaranteed by the Equal Protection Clause to the United States Constitution.

91. Defendants deprived Plaintiff of the rights guaranteed to her under the Equal Protection Clause of the United States Constitution in violation of 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Moreno prays for the following relief:

a) That Defendants' conduct be declared to be in violation of Plaintiff's rights as outlined by the Equal Protection Clause of the United States Constitution;

b) That Defendants and their employees, agents, attorneys, successors and assigns, and those acting in concert therewith be enjoined from any conduct violating Plaintiff's rights or the rights of others similarly situated as secured by the Equal Protection Clause of the United States Constitution, and that the Court order such other injunctive relief as

necessary to prevent Defendants from continuing their discriminatory practices and to protect others similarly situated;

c) That Plaintiff be awarded compensatory damages;

d) That Plaintiff be made whole by providing her compensation for the past and future mental and emotional harm and anguish, and other affirmative relief;

e) That Plaintiff be awarded reasonable attorneys' fees and costs incurred in prosecuting this action; and

f) That Plaintiff be awarded such additional and further relief as is just and proper.

## JURY DEMAND

Plaintiff Moreno hereby demands a trial by jury of all the issues arising out if the matters pled herein.

/s/ Devin C. Kelly

ROXANNE CONLIN AT0001642
DEVIN C. KELLY AT0011691
ROXANNE CONLIN & ASSOCIATES, P.C.
3721 SW 61st Street, Suite C
Des Moines, IA  50321-2418
Phone: (515) 283-1111; Fax: (515) 282-0477
Email: roxanne@roxanneconlinlaw.com
          dkelly@roxanneconlinlaw.com
       cc: dpalmer@roxanneconlinlaw.com
ATTORNEYS FOR COMPLAINANT