IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISON

| | | |
|---|---|---|
| AMANDA MORENO, D.O., | ) | LAW NO. 4:23-cv-00121-SHL-SBJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **DEFENDANTS MAHASKA HEALTH** |
| | ) | **PARTNERSHIP AND KEVIN DERONDE'S** |
| MAHASKA HEALTH PARTNERSHIP; | ) | **BRIEF IN SUPPORT OF MOTION FOR** |
| and KEVIN DERONDE, | ) | **SUMMARY JUDGMENT** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COME NOW** Defendants Mahaska Health Partnership and Kevin DeRonde, pursuant to

Fed. R. Civ. P. 56, and hereby submit the following Memorandum of Law in Support of their

Motion for Summary Judgment.

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 2

SUMMARY JUDGMENT STANDARD ............................................................................ 3

ARGUMENT ........................................................................................................................ 4

   I.  COUNT I: DISCRIMINATION AND RETALIATION IN VIOLATION OF THE IOWA
CIVIL RIGHTS ACT. ......................................................................................................... 4

   A.  Under the ICRA, Plaintiff Cannot Establish a Claim for Discrimination as a Matter of
Law. .................................................................................................................................... 4

   i.  Plaintiff Cannot Establish a *Prima facie* Claim of Discrimination................................ 6

   *1.*  *Discrimination on the Basis of Sex* .............................................................................. 6

   *2.*  *Discrimination on the Basis of Religion* ..................................................................... 8

   ii.  Defendants' Legitimate Bases for Not Renewing Plaintiff's Contract Rebut Any
Presumption ........................................................................................................................ 9

   iii.  Plaintiff Cannot Carry Her Burden to Demonstrate Defendants' Legitimate, Non-
Discriminatory Bases for Termination Were Pretext for Discrimination ........................... 10

   B. Under the ICRA, Plaintiff's Retaliation Claim Fails as a Matter of Law. ....................... 12

   i.  Plaintiff Failed to Allege Facts Showing Engagement in Protected Activity............... 13

   ii.  Plaintiff's Allegations Fail to Establish an Adverse Employment Action. .................. 14

    *1.   Plaintiff's Paid Suspension is Not an Adverse Employment Action.* ............................ 15

    *2.   Alleged Interference with Plaintiff's Ability to Obtain New Employment.* ................... 16

   iii.      Plaintiff Cannot Establish the Requisite Causal Connection to Establish her Claim for Retaliation. .................................................................................................................... 17

  C. Plaintiff Cannot Establish her Claims of Retaliation Against Defendant DeRonde as a Matter of Law ....................................................................................................................... 20

  II. COUNT II: DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII ............................................................................................................................................ 20

  A.    Under Title VII, Plaintiff's Discrimination Claims Fail as a Matter of Law ............... 21

  i.    Plaintiff Cannot Establish a *Prima facie* Case of Discrimination on the Basis of Sex. 23

  ii.   Plaintiff Cannot Establish a *Prima facie* Case of Discrimination on the Basis of Religion ...................................................................................................................................... 27

  iii.      Plaintiff Cannot Show that Defendants' Legitimate, Non-Discriminatory Basis for Non-Renewal of Employment Contract Was a Pretext for Discrimination .......................... 30

  b. Under Title VII, Plaintiff's Retaliation Claim Fails as a Matter of Law. ........................ 32

  i.    Plaintiff Cannot Establish She Engaged in a Protected Activity ................................. 34

  ii.   Under Title VII Plaintiff Cannot Establish She Suffered an Adverse Employment Action ...................................................................................................................................... 36

  iii.      No Causal Connection Exists Between Plaintiff's Engagement in any Protected Activity and the Adverse Employment Action(s) ................................................................... 37

CONCLUSION ................................................................................................................... 40

## **INTRODUCTION**

Plaintiff Amanda Moreno, D.O., commenced her employment as an emergency room physician at Mahaska Health Partnership (hereinafter "MHP") in 2013. SOF ¶ 1. On October 1, 2021, MHP served Plaintiff with a notice of non-renewal of her employment agreement ("Agreement"), terminating her contract without cause pursuant to the 90-day termination provision outlined in the Agreement. SOF ¶ 2. At the time of receiving this notice, Plaintiff was one of five emergency department physicians employed by MHP. SOF ¶ 5 Plaintiff has now filed suit against MHP, alleging that the non-renewal of her contract was the result of discriminatory conduct based on her religion, as she identifies as an atheist, and her sex, as she is female.

The individual Plaintiff seeks to hold liable for the decision to non-renew her contract with MHP is C.E.O. Kevin DeRonde. Kevin DeRonde became C.E.O. of MHP in 2018. SOF ¶ 12. Upon his arrival, he continued Plaintiff's contract and raised her salary $80,000.00. SOF ¶ 14. Mr. DeRonde maintained Plaintiff's contract with MHP from 2018 until it was non-renewed on October 1, 2021. SOF ¶ 13. Mr. DeRonde has hired multiple female physicians before, during, and after Plaintiff's tenure and hired a female emergency room physician to join the MHP emergency department shortly before deciding to non-renew Plaintiff's contract with MHP. SOF ¶ 54. Mr. DeRonde has always maintained a staff of physicians and advance practice providers that is at least equal in numbers between males and females, if not typically employing a greater number of female physicians and advanced practice providers than males. SOF ¶ 26. In 2021, MHP employed 513 employees, 425 were female and 88 were male. SOF ¶ 25.

Plaintiff has failed to provide any evidence supporting her assertion that the non-renewal of her contract was because she is atheist. In support of her sex discrimination claim, Plaintiff cites the non-renewal notices issued to two other female physicians. However, the employment of both of those physicians was not ultimately terminated and they remain gainfully employed with MHP today. SOF ¶¶ 55, 56. For the reasons set forth below, Plaintiff's claims fail as a matter of law, and Defendants are entitled to summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if a "movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering motions for summary judgment, the court must view the evidence "in the light most favorable to the nonmoving party." *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party however is not allowed to "rely on

allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007); *see* Fed. R. Civ. P. 56(e).

The nonmoving party must be able to support their allegations beyond "mere speculation, conjecture, or fantasy." *Id.* (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). A genuine issue exists "if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). "Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment." *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). General allegations and denials are insufficient to withstand summary judgment. Moreover, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## ARGUMENT

### I.    COUNT I: DISCRIMINATION AND RETALIATION IN VIOLATION OF THE IOWA CIVIL RIGHTS ACT.

#### A.    Under the ICRA, Plaintiff Cannot Establish a Claim for Discrimination as a Matter of Law.

In Count I, Plaintiff has asserted a claim for discrimination on the basis of her sex and religion under the Iowa Civil Rights Act ("ICRA"). For the following reasons, those claims fail as a matter of law.

Plaintiff claims the same adverse employment action as the basis for her sex and religion

discrimination claim: the non-renewal of her contract as an emergency room physician with MHP. SOF ¶ 37. There is zero direct evidence of discrimination in this lawsuit. Plaintiff admits there was never a point in time where any of the individuals she sued sent her anything in writing that she felt was discriminatory in any matter. SOF ¶ 47. Plaintiff admits she was never subject to gender or religious-based comments to her or in her presence during her employment.  SOF ¶ 47. Similarly, she admitted never during her employment did she observe any posting or writings of any sort by any of the named Defendants that she thought were discriminatory or inappropriate in any way based on sex or religion.  SOF ¶ 47. She never received an email or anything in writing that conveyed a joke or innuendo based on sex or religion.  SOF ¶ 47. She never witnessed anyone make any kind of inappropriate gender-based or religious-based comments to anyone in the workplace. SOF ¶ 47. Plaintiff has not a single complaint nor evidence of discrimination aside from the mere fact that in addressing an underperforming five (5) physician emergency room department staffed predominantly by female physicians, three female physician contracts were non-renewed. As such, there is no direct evidence of discrimination on the basis of sex nor religion and Plaintiff's claims must necessarily rely on circumstantial evidence.  Accordingly, Plaintiff must establish her claim for discrimination using the *McDonell Douglas* burden shifting analysis as adopted and modified by the Iowa Supreme Court in *Feeback v. Swift Pork Company*, 988 N.W.2d 340, 347 (Iowa 2023).

The modified *McDonell Douglas* framework for summary judgment requires plaintiffs to carry the initial burden of establishing a *prima facie* case of discrimination. *See id.* Once a *prima facie* case is established, the burden shifts to the defendants to articulate some legitimate, nondiscriminatory reason for the challenged action. *See id.*  Once Defendant has done so, the burden shifts back to Plaintiff to prove that the "employer's proffered reason is pretextual or, while

true, was not the only reason for his termination and that [the protected characteristic] was another motivating factor." *Id.* at 348 (citing *Hawkins v. Grinnell Reg'l Med. Ctr.*, 929 N.W.2d 261, 272 (2019)).

### i. Plaintiff Cannot Establish a *Prima facie* Claim of Discrimination

In order to meet the burden for a *prima facie* discrimination claim through such circumstantial evidence, a plaintiff must prove (1) the plaintiff belongs to a protected class, (2) the plaintiff was qualified for the employment at issue; (3) the plaintiff suffered adverse employment action, and (4) and the circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See Feeback,* 988 N.W.2d at 347. Iowa courts have held that circumstantial evidence is "sufficient to establish a fact only where the evidence has sufficient force to allow a factfinder to draw a legitimate inference from the evidence presented." *Godfrey v. State*, 962 N.W.2d 84, 102 (Iowa 2021). A legitimate inference drawn from circumstantial evidence must be "rational, reasonable, and otherwise permissible under the governing substantive law." *Id.* (quoting *McIlravy v. N. River Ins.,*, 653 N.W.2d 323, 328 (Iowa 2002)). "An inference is not legitimate if it is based upon suspicion, speculation, conjecture, surmise, or fallacious reasoning." *Id.*; *see Willey v. Riley*, 541 N.W.2d 521, 527 (Iowa 1995) ("Circumstances are not sufficient when the conclusion in question is based on surmise, speculation or conjecture." (citation omitted)); *see also Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 545 (Iowa 2018).

Plaintiff is unable to establish a *prima facie* claim for discrimination as Plaintiff does not have any nor has she presented any evidence that demonstrates the circumstances of Plaintiff's contract non-renewal gave rise to an inference of discrimination on the basis of sex nor religion.

### 1. *Discrimination on the Basis of Sex*

The sole evidence Plaintiff presents to support her sex discrimination claim is the general

allegation that she was one of three female emergency room physicians, along with Dr. Deb DeJong and Dr. Kym Life, whose contracts were not renewed, while her only male physician colleague in the five (5) physician emergency department, had no action taken with respect to his contract.[1] SOF ¶ 5. Setting aside the fact that both Drs. DeJong and Life remain employed with MHP (SOF ¶¶ 55, 56), even if their contracts were not renewed, that fact alone does not generate a genuine issue of material fact to survive summary judgment as Plaintiff, apart from the fact these physicians were female, has offered no evidence that any action with respect to these individuals contracts was taken because of their sex.  Plaintiff's unsupported speculation that any action taken with respect to DeJong's and Life's contracts was on the basis of their sex is insufficient to raise a jury question. *See Godfrey*, 962 N.W.2d at 106 ("[The plaintiff's] personal, conclusory beliefs are insufficient as a matter of law to generate a fact question for the jury."); *see also Hausler v. Gen. Elec. Co.,* 134 F. App'x 890, 894 (6th Cir. 2005) (agreeing with the district court that evidence supervisor "disproportionately disciplined [three] older workers ... was insufficient to create an issue of fact as to pretext because the statistical sample was too small and because the majority of employees under [his] supervision were over forty years old"); *McIntosh v. Country Club of Little Rock,* No. 4:17-cv-757-DPM, 2019 WL 2618145, at *1 (E.D. Ark. June 26, 2019) (granting motion for summary judgment and stating that although plaintiff pointed out the Country Club fired four other older employees, "there's no evidence that these employees were fired because of their age"); *Prochaska v. Color-Box, L.L.C.,* No. C04-1009-LRR, 2005 WL 1410846, at *12 (N.D. Iowa June 1, 2005) (granting summary judgment on age discrimination claim and rejecting argument that plaintiff's list of other older employees who were terminated created fact question on pretext when he admitted he lacked firsthand knowledge about the reasons for their adverse employment

---

[1] Dr. Cornelder's contract was not up for renewal (SOF ¶ 11).

decisions).

Without any evidence whatsoever to present to support her sex discrimination other than the mere fact that two other female physicians were also originally selected to have their contracts not renewed, Plaintiff is unable to establish a *prima facie* claim for sex discrimination as she cannot establish that the decision to not renew her contract gives rise to an inference of discrimination on the basis of sex.

### 2. *Discrimination on the Basis of Religion*

Plaintiff is also unable to establish a *prima facie* claim for discrimination on the basis of religion as Plaintiff cannot establish that the circumstances surrounding the non-renewal of her gave rise to an inference of discrimination. Plaintiff testified at her deposition that she had no personal nor firsthand knowledge to support her allegation of discrimination on the basis of her religion. SOF ¶ 40. Twenty-two individuals have been deposed in this case and the only individual who claims that Plaintiff's status as an atheist was ever mentioned by decision maker Kevin DeRonde is Sarah Dickey, who also has a claim currently pending against Defendants in her own separate lawsuit. SOF ¶¶ 43, 44. Sarah Dickey testified that Kevin DeRonde allegedly said **years** before Plaintiff's contract was not-renewed that Plaintiff was an atheist. SOF ¶ 43. While this testimony as to Kevin DeRonde stating Dr. Moreno was an atheist is disputed by DeRonde, even if true, the mere fact that DeRonde allegedly mentioned Plaintiff's religion years before her contract was not renewed does not give rise to the inference that any action was taken with respect to her employment *because* of her religion (or lack thereof). *See Godfrey*, 962 N.W.2d at 102. This is especially true in light of the fact that when Ms. Dickey asked whether Mr. DeRonde mentioned Plaintiff's atheism during or surrounding the discussions to not-renew her contract, Ms. Dickey testified that he did not. SOF ¶ 45. *See Hedlund v. State*, 930 N.W.2d 707, 721 (Iowa 2019), *as*

*amended* (Sept. 10, 2019) (stating that remarks made remote in time to the decision-making process do not give rise to a reasonable inference of discrimination).

Nonetheless, Plaintiff has zero knowledge that Mr. DeRonde knew Plaintiff was an atheist at the time he made the decision not to renew her contract.  As for the isolated self-serving statement by Sarah Dickey, who is also in the midst of suing Mr. DeRonde and MHP, even if Mr. DeRonde made the statement that Plaintiff was an atheist, (which no one heard other than this co-litigator) her testimony of his alleged knowledge is insufficient to establish that any such knowledge had anything to do with his decision to not renew Plaintiff's contract years later, especially coupled with the fact that Plaintiff testified she never told any Defendants she was an atheist and never made a complaint to anyone at MHP, during her employment, about anyone treating her any way improper related to her religion or lack thereof. SOF ¶ 42. Plaintiff is unable to establish a *prima facie* claim for discrimination on the basis of her religion as she cannot establish that the circumstances surrounding the decision to not renew her contract give rise to an inference of discrimination on the basis of religion.

### ii.  Defendants' Legitimate Bases for Not Renewing Plaintiff's Contract Rebut Any Presumption

In the unlikely event that Plaintiff can establish a *prima facie* claim of discrimination, the burden of proof would shift to the employer to rebut the presumption of Plaintiff's claims. A defendant can do so through the production of evidence showing the employment decision at issue was conducted for a legitimate, non-discriminatory purpose. *See Kunzman v. Enron Corp.*, 902 F. Supp. 882, 902 (N.D. Iowa 1995). "The burden to articulate a non-discriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Floyd v. State of Mo. Dep't. of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 936 (8th Cir. 1999).

In this case, Defendants have readily identified and provided legitimate business reasons for why Plaintiff's contract was not renewed. Plaintiff's contract was not renewed based on her personal performance and the performance of the emergency room.   *See* Defendants' SOF ¶¶ 17-21. Defendants exercised their contractual right to not renew Plaintiff's contract. SOF ¶ 7. As such, Defendants have conclusively established legitimate business reasons for Plaintiff's contract non-renewal and such legitimate reasons rebut any presumption that would result if Plaintiff could establish a *prima facie* claim for discrimination.

### iii.  Plaintiff Cannot Carry Her Burden to Demonstrate Defendants' Legitimate, Non-Discriminatory Bases for Termination Were Pretext for Discrimination

If her case survived to this state, and with Defendants having provided legitimate nondiscriminatory reasons for the decision to non-renew Plaintiff's contract, any presumption of discrimination "disappears," and the burden would return to Plaintiff to present evidence showing the "proffered reason was pretext for [unlawful] discrimination." *Feeback*, 988 N.W.2d at 348; *see Carter v. Atrium Hosp*., 997 F.3d 803, 808–09 (8th Cir. 2021) (explaining that presumption of discrimination disappears if employer provides legitimate reason for its decision and evidentiary burden returns to plaintiff to show proffered reason was pretextual). Plaintiff must present evidence to show that Defendants' stated reasons for her termination were " 'not the true reason,' but rather a 'pretext for discrimination.' " *Carter*, 997 F.3d at 810  (quoting *Kim v. Nash Finch Co*., 123 F.3d 1046, 1056 (8th Cir. 1997); *see Hedlund*, 930 N.W.2d at 720 (finding defendants' proffered legitimate reasons and stating the plaintiff "now retains the ultimate burden of producing evidence from which a reasonable jury could conclude the defendants' proffered reasons were pretextual"); *see also Deboom v. Raining Rose, Inc*., 772 N.W.2d 1, 6–7 (Iowa 2009) (holding the plaintiff must show the employer's reason was pretextual and that unlawful discrimination was the real reason for the termination); *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 141 (2000) ("That is,

the plaintiff's [protected characteristic] must have 'actually played a role in [the employer's decision making] process and had a determinative influence on the outcome.'" (citation omitted) (alteration in original)). The showing of pretext necessary to survive summary judgment requires more than merely discrediting the employer's proffered reason for the adverse employment decision. *See Main v. Ozark Health, Inc*., 959 F.3d 319, 327 (8th Cir. 2020).

Moreover, in *Feeback v. Swift Pork Company,* the Iowa Supreme Court adopted and applied the "honest belief rule." *See* 988 N.W.2d at 349. This rule acknowledges that "courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Main*, 959 F.3d at 325 (quoting *Wilking v. Cnty. of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998)). To survive summary judgment, a plaintiff must show that their employer did not honestly believe the legitimate reason that is proffered in support of the adverse action. *See id.* Pretext is not established "simply by showing that the employer's 'honest' belief was erroneous, unwise, or even unfair." *Id.* There is no evidence in this case that Kevin DeRonde didn't believe that changes needed to be made in the emergency department at MHP at the time of Plaintiff's contract non-renewal. Even co-litigator Sarah Dickey stated that she believed that it was Mr. DeRonde's honest belief that a change needed to happen in the emergency department.  SOF ¶ 46.

To prove pretext, Plaintiff must demonstrate that her sex and/or her religion actually played a role in DeRonde's decision to not renew her contract and had a determinative influence on the outcome. *See Avery v. Iowa Dep't of Hum. Servs*., 995 N.W.2d 308, 314 (Iowa Ct. App. 2023). Accordingly, in *Avery v. Iowa Department of Human Services*, the Iowa Court of Appeals quoted the following excerpt from the district court's ruling in affirming its grant of summary judgment:

> A material question of fact regarding pretext can be demonstrated in at least two ways: (1) by showing that the employer's explanation is unworthy of credence because it has no basis in fact; or (2) by persuading the court that a prohibited reason more likely motivated the employer. The court's inquiry is limited to

> whether the employer gave an honest explanation of its behavior; it should not "sit
> as a super-personnel department that reexamines an entity's business decisions."

*Id.*

Plaintiff has no evidence or testimony to support that DeRonde made the decision to not-renew her contract on the basis of any consideration, let alone an impermissible one, other than Plaintiff's performance and the needs of the emergency department at Mahaska Health coupled with MHP's contractual right to terminate the Agreement without cause upon 90 days notice. Plaintiff lacks any probative evidence (as well as any evidence whatsoever) from which a reasonable jury could infer that Defendants' legitimate, nondiscriminatory reason for termination was pretextual and Plaintiff's gender or religion was the real reason that Plaintiff's contract was not renewed. As such, Defendants are entitled to summary judgment and Plaintiff's speculative, unsupported discrimination claim should be dismissed with prejudice.

**B.  Under the ICRA, Plaintiff's Retaliation Claim Fails as a Matter of Law.**

Pursuant to the ICRA retaliation provision, it constitutes an unfair or discriminatory employment practice for:

> Any person to discriminate or retaliate against another person in any of the rights
> protected against discrimination by this chapter because such person has lawfully
> opposed any practice forbidden under this chapter, obeys the provisions of this
> chapter, or has filed a complaint, testified, or assisted in any proceeding under this
> chapter.

Iowa Code § 216.11(2). "[T]he retaliation provision of the ICRA *mirrors almost exactly* the retaliation provision of Title VII." *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 585 (Iowa 2017) (emphasis in original). Given the identical language employed in both retaliation provisions, "Iowa law calls for applying to an ICRA claim the same elements under a standard similar to the Title VII standard." *Casey v. Riedel,* 195 F. Supp. 2d 1122, 1130 (S.D. Iowa 2002).

"Under Iowa law, '[t]o prevail on a statutory retaliation claim, the plaintiff must show (1) that he or she engaged in statutorily protected activities; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events.'" *Selden v. Des Moines Area Cmty. Coll.*, 2 N.W.3d 437, 447 (Iowa 2024) (quoting *Godfrey*, 962 N.W.2d at 106–07) (internal citation omitted); *see also* Iowa Civil Jury Instruction 3140.3 (updated December 2024). The instruction expounds further on the third element, specifying that: "To establish a causal connection, plaintiff must show the plaintiff's protected activity was a motivating factor in the employer's subsequent adverse employment action." Iowa Civil Jury Instruction 3140.3. Additionally, a comment to the instruction provides an attendant instruction defining the term "protected activity," which includes "[o]pposing conduct the employee reasonably believes constitutes unlawful discrimination, harassment or retaliation and alerts an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Id.*

Plaintiff cannot establish any of the *prima facie* elements of her retaliation claim under ICRA. Plaintiff's failure to carry her burden of proof is discussed in further detail below with respect to each element.

### i.    Plaintiff Failed to Allege Facts Showing Engagement in Protected Activity.

Like the analysis under Title VII discussed *infra*, determining whether a plaintiff engaged in "protected activity" under the ICRA depends on whether the plaintiff's actions fall under the "opposition clause" or "participation clause" of the retaliation provision. "So-called 'opposition clause' cases typically require proof that the plaintiff opposed an unlawful employment practice, and 'participation clause' cases typically require retaliation for participation 'in any manner' in an 'investigation, proceeding, or hearing,' initiated by the EEOC or its designee." *Schoonover v. Schneider Nat. Carriers, Inc.*, 492 F. Supp. 2d 1103, 1152 (S.D. Iowa 2007) (citing 42 U.S.C. §

2000e–3(a)). Here, Plaintiff's claim alleges one instance of "protected activity" that occurred prior to the initiation of any formal proceedings, which necessarily renders this an "opposition clause" case.

"Under the opposition clause, an employee engages in statutorily protected activity where the employee opposes conduct [s]he reasonably believes constitutes unlawful discrimination." *Godfrey,* 962 N.W.2d at 107. "Although '[m]agic words are not required, ... protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue.'" *Id.* (quoting *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010)).

The alleged protected activities that Plaintiff alleges she engaged in for purposes of her retaliation claim are stated in her Complaint: "seeking out legal counsel and contacting the Iowa Freedom of Information Council to obtain Defendant MHP Board of Trustee meeting minutes." Complaint Dkt. 1 ¶ 38. As a threshold matter, contacting the Iowa Freedom of Information Council to obtain Board of Trustee meeting minutes is not a statutorily protected activity. With respect to engaging counsel, Plaintiff has no evidence that such engagement resulted in the opposition of employment practices such to arise to statutorily protected conduct. *See* Iowa Code Ann. § 216.11.

**ii. Plaintiff's Allegations Fail to Establish an Adverse Employment Action.**

While Defendants maintain that Plaintiff cannot establish that she engaged in statutorily protected activity under the ICRA, Plaintiff's claim still fails as a matter of law for another reason: The evidence fails to show that Plaintiff suffered an adverse employment action. "[A]n adverse employment action is 'an action that detrimentally affects the terms, conditions, or privileges of employment. Changes in duties or working conditions that cause no materially significant disadvantage to the employees are not adverse employment actions.'" *Haskenhoff,* 897 N.W.2d at 587 (quoting *Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 862 (Iowa 2001)).

Here, Plaintiff alleges two adverse employment actions as the basis for her retaliation claim: (1) Her paid suspension from work, and (2) Negative comments about Plaintiff made to prospective employers following her resignation. However, for the reasons discussed in further detail below, neither alleged instance amounts to an adverse employment action under the ICRA.

　　　　1.　*Plaintiff's Paid Suspension is Not an Adverse Employment Action.*

First, Plaintiff alleges her paid suspension from work was an adverse employment action by MHP in retaliation for Plaintiff seeking legal advice from outside counsel. However, a suspension *with pay* is not recognized as an adverse employment action. *See Singletary v. Missouri Dept. of Corr.,* 423 F.3d 886, 891–892 (8th Cir. 2005) (affirming summary judgment dismissal of plaintiff's retaliation claim, holding that plaintiff did not suffer adverse employment action when he was placed on *paid* administrative leave); *see also Garang v. Smithfield Farmland Corp.,* 439 F. Supp. 3d 1073, 1093 (N.D. Iowa 2020) (reviewing caselaw and concluding that "a short suspension, without any other aspect of employment being affected, does not appear to threaten the type of significant employment-related harm that is needed for an adverse employment action. On the other hand, a suspension without pay effectively decreases an employee's pay, which looks similar to other adverse employment actions." (internal citation omitted)). And even in certain cases involving suspensions *without* pay, courts have found there was no adverse employment action, particularly where the unpaid suspension was short in duration. *See Kent v. Iowa,* 651 F. Supp. 2d 910, 942 (S.D. Iowa 2009) (concluding the plaintiff's two-day and five-day unpaid suspensions were insufficient to support claims because the plaintiffs "did not suffer a 'material' employment disadvantage and cannot demonstrate that they suffered an adverse employment action."); *see also Schwarzkopf v. Brunswick Corp.,* 833 F. Supp. 2d 1106, 1121 (D. Minn. 2011) (discussing standard for adverse employment actions under Title VII and noting that

"[s]uspensions without pay generally do not satisfy this standard unless they involve additional collateral consequences.").

Therefore, Plaintiff cannot establish the second element of her *prima facie* case.

### 2. *Alleged Interference with Plaintiff's Ability to Obtain New Employment.*

Plaintiff alleges the engagement in the same protective activity resulted in Defendants retaliating against her by criticizing her work to potential employers after her employment with MHP ended. However, the undisputed facts demonstrate there is no basis in fact that Defendants interfered in any way with her efforts to gain employment. SOF ¶ 50. Moreover, even if there was, the alleged conduct does not constitute an adverse employment action.

Plaintiff alleged that someone (unidentified) at MHP made negative comments (unspecified) to two of her prospective employers, the Madison County Memorial Hospital and Curana Health, a regional nursing home. However, Plaintiff has no evidence showing that any of the Defendants were the ones who made these comments. SOF ¶ 50. In fact, Plaintiff cannot even identify who made the alleged comments, nor what those comments were. SOF ¶ 50. Moreover, the information Plaintiff received from Curana Health, a regional nursing home, indicated that the information received was from Northern Mahaska employees NOT Mahaska Health Partnership employees. Northern Mahaksa is an entirely different entity than the Defendant MHP involved in this case. SOF ¶ 51. Plaintiff even admitted this distinction in her deposition testimony. SOF ¶ 51.

Plaintiff's inability to identify a person that made the alleged "negative comments", or a specific comment, clearly reveals Plaintiff's failure to establish her subjection to an adverse employment action by Defendants. Therefore, Plaintiff cannot establish the second essential element for a *prima facie* case of retaliation and her claim fails as a matter of law.

Moreover, even if Plaintiff could identify a "negative" statement made by Defendant to Plaintiff's prospective employers, that conduct is still insufficient to constitute an adverse action for the purposes of Plaintiff's retaliation claim. *See Attaie v. Telex Commc'ns, No.* 4:10CV3238, 2011 WL 843973, at *2 (D. Neb. Mar. 9, 2011) (stating that establishing retaliation claim based on a negative employment reference requires showing that false information was disseminated to prospective employer and the false information was material to prospective employer's hiring decision); *see also NGrime v. Papillion Manor, Inc.,* No. 8:08CV23, 2009 WL 382757, at *7 (D. Neb. Feb. 12, 2009) (concluding that plaintiff failed to show a "bad report" was given to prospective employers); *Griffin v. Webb,* 653 F. Supp. 2d 925, 936 (E.D. Ark. 2009) (finding plaintiff could not prove adverse employment action against her because she admitted the defendant only provided date of hire and job title to prospective employers). The record is devoid of evidence to establish false information or that false information was relied upon and was material to the decision making of any prospective employer.

Moreover, to the extent Plaintiff was denied employment after leaving MHP, it is undisputed that Plaintiff has a history of disciplinary action, including license discipline because of her inappropriate sexual conduct with a patient and unprofessional and unethical behavior for which she was put on probation. SOF ¶ 49. The fact that other facilities chose not to hire her is consistent with her public record.

### iii.    Plaintiff Cannot Establish the Requisite Causal Connection to Establish her Claim for Retaliation.

Plaintiff cannot establish the requisite causal connection for the very same reason she cannot establish the first two *prima facie* elements of her claim—both alleged instances of retaliation occurred before the alleged protected activity. *See Stewart v. Indep. Sch. Dist. No. 196,* 481 F.3d

1034, 1044 (8th Cir. 2007) ("[A]lleged retaliation which precedes protected conduct cannot logically be used to show causation because a prior event cannot be caused by a later event.").

It is well-established that "[a] plaintiff must show the employer had actual or constructive knowledge of the protected activity in order to establish a *prima facie* case of retaliation." *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 715 (8th Cir. 2000); *see also Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641, 645 (8th Cir. 2009) (absence of knowledge of prior protected activity eliminates causation); *Simon v. Simmons Foods, Inc.*, 49 F.3d 386, 389 (8th Cir. 1995) (requiring plaintiff to show "the employer had actual or constructive knowledge of the protected conduct" to establish a *prima facie* case of retaliation); *Wolff v. Berkley, Inc.*, 938 F.2d 100, 103 (8th Cir. 1991) (explaining that causal link between protected activity and adverse employment action "does not exist if the employer is not aware of the employee's statutorily protected activity"); *Green v. City of Pine Bluff*, Ark., 105 Fed. Appx. 880, 882 (plaintiff's failure to rebut decisionmaker's sworn statement that he was unaware of plaintiff's purported opposition to unlawful conduct dispositive of retaliation claim). "Whether the employer had knowledge of the plaintiff's protected activity is a question of fact." *Strubbe v. Crawford Cnty. Meml. Hosp.*, No. C15-4034-LTS, 2017 WL 8792692, at *6 (N.D. Iowa Dec. 6, 2017), *aff'd sub nom. U.S. ex rel. Strubbe v. Crawford Cnty. Meml. Hosp.*, 915 F.3d 1158 (8th Cir. 2019).

Plaintiff has no evidence that Defendants were even aware of her actions at the time she was notified of the suspension. Plaintiff was given a written notice of suspension on November 4, 2021, based on her poor work performance and unprofessional behavior, which included several specific examples of inappropriate actions and remarks by Plaintiff. SOF ¶¶ 28-32. During her deposition, Plaintiff admitted to all of the conduct asserted by Defendants as the basis for her suspension. SOF ¶ 49. Despite her admission, Plaintiff now claims that she was suspended from work in retaliation

for "seeking out legal counsel." Plaintiff has not presented any evidence or alleged facts indicating that Defendants were aware she contacted legal counsel prior to receiving her suspension with pay from work. Standing alone, this clearly demonstrates that Plaintiff cannot establish the first *prima facie* element of her claim because her employer was not aware of her alleged "opposition conduct" when the "act of retaliation" occurred. Thus, the evidence fails to show that Plaintiff's alleged act of opposition alerted her employer that she believed unlawful discrimination was afoot. *See Godfrey,* 962 N.W.2d at 107.

Even if Plaintiff's actions did constitute protected activity, Plaintiff cannot establish a causal connection between her alleged actions and the work suspension because she has no evidence that Defendants were even aware of her participation in protected activity. Thus, her claim necessarily fails as a matter of law on that basis, as well. Causation cannot be established if there is no evidence showing the defendant's had some knowledge of the protected activity. *See Fitzgerald v. Salsbury Chem., Inc.,* 613 N.W.2d 275, 289 (Iowa 2000) (explaining that if the employer has no knowledge of the protected activity, causation cannot be established). Whether such evidence exists is a critical inquiry for retaliation claims on summary judgment because plaintiffs' relying on circumstantial evidence to support their claims must present evidence sufficient to allow a jury to reasonably infer that the adverse employment action was caused by the employer's retaliatory motive. *See id.*

Plaintiff's inability to establish Defendant's knowledge of the protected activity is especially detrimental in this case because even if this Court finds that Plaintiff has established a *prima facie* case of retaliation, her claim still fails as a matter of law because Defendant's have proffered a legitimate explanation for Plaintiff's suspension from work. As a result, Plaintiff's evidence is wholly insufficient for surviving summary judgment

Even if Plaintiff had presented evidence suggesting Defendants were aware she sought legal advice (for unknown reasons) before she received her suspension notice, it still would not save her claim from dismissal on summary judgment. "Evidence of an employer's concerns about an employee's performance before the employee's protected activity undercuts a finding of causation." *Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 504 (8th Cir. 2005); *see also Smith v. Ashland, Inc.*, 250 F.3d 1167, 1174 (8th Cir. 2001) (finding the employee had failed to establish a causal connection where the performance problems were noted by the employer prior to the protected activity); *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994) (stating a causal link between protected activity and adverse employment action cannot be found if the employer had no prior knowledge of the protected activity).

### C. Plaintiff Cannot Establish her Claims of Retaliation Against Defendant DeRonde as a Matter of Law

Plaintiff has presented zero evidence that Defendant Kevin DeRonde knew of her engagement in her alleged protected activity, or that he took any adverse action because of it. DeRonde was not involved in the decision to suspend Plaintiff from employment, nor is there any issue of fact that he had any contact ever with prospective employers related to Plaintiff's jbo seeing.  As such, Plaintiff's claim for retaliation against Kevin DeRonde, individually, must be dismissed as a matter of law. *See Buettner*, 216 F.3d at 715; *see also Rumsey v. Woodgrain Millwork, Inc.*, 962 N.W.2d 9, 36 (Iowa 2021).

### II.    COUNT II: DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII

In Count II of Plaintiff's Complaint, Plaintiff raises two claims alleging violations of Title VII of the Civil Rights Act of 1964: (1) discrimination, and (2) retaliation. *See* 42 U.S.C. §§ 2000e–2(a)(1) & 2000e–2(m). Both claims arise out of the same operative facts alleged by Plaintiff in support of Count I, which alleged violations of the ICRA. The corresponding legal framework for

discrimination and retaliation claims brought pursuant to Title VII is the same one courts apply to claims pursued under the ICRA. *See, e.g., Smothers v. Rowley Mem'l Masonic Home*, No. 4:19-cv-00398-RGE-HCA, 2021 WL 4143043, at *7 (S.D. Iowa Aug. 10, 2021) (applying the same framework to analyze "discrimination claims under the ICRA and Title VII"); *see also Stoddard v. BE & K, Inc.*, 993 F. Supp. 2d 991, 1002 (S.D. Iowa 2014) ("[C]laims asserting retaliation under the ICRA are generally analyzed under the same legal framework as Title VII retaliation claims."). Like Plaintiff's claims under the ICRA, her discrimination and retaliation claims under Title VII fail as a matter of law. Therefore, Defendants are entitled to summary judgment on all of Plaintiff's Title VII claims.

A.    **Under Title VII, Plaintiff's Discrimination Claims Fail as a Matter of Law**

Plaintiff's first claim under Title VII alleges discrimination based on two protected characteristics: sex and religion.

> "Title VII. . . prohibits two categories of employment practices. It is unlawful for an employer:
> '(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, *religion*, *sex*, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.' "

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.,* 575 U.S. 768, 771 (2015) (citing 42 U.S.C. § 2000e–2(a)) (emphasis added) (citation omitted). The United States Supreme Court has interpreted the foregoing provisions as delineating two distinct theories of employer liability for status-based discrimination claims under Title VII: disparate treatment and disparate impact. *See id.* "To prevail on a disparate treatment claim, a Title VII plaintiff must demonstrate that an employer intentionally discriminated against her on the basis of a protected characteristic." *E.E.O.C. v. Catastrophe Mgt.*

*Sols.,* 852 F.3d 1018, 1024 (11th Cir. 2016). Conversely, "disparate impact claim[s] targets an employment practice that has an actual, though not necessarily deliberate, adverse impact on protected groups." *Id.* Plaintiff's discrimination claims are premised on a disparate treatment theory of liability.

"In such 'disparate treatment' cases, which involve 'the most easily understood type of discrimination,' the plaintiff is required to prove that the defendant had a discriminatory intent or motive." *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 986 (1988). There are two ways for disparate-treatment discrimination claims to potentially survive the summary judgment stage. *See Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004). "The first is by proof of 'direct evidence' of discrimination. . . direct evidence is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." *Id.* (quoting *Thomas v. First Nat'l Bank of Wynne,* 111 F.3d 64, 66 (8th Cir. 1997)). The second is through circumstantial evidence that give reason to an inference of discrimination. *See id.*

In the context of Title VII, categorizing evidence as "direct" simply measures the strength of proof, which deviates from general evidentiary standards that focus on "whether it is 'circumstantial' evidence." *Id.* Moreover, distinguishing evidence as direct or circumstantial is a critical determination in Title VII cases because it determines the applicable legal framework: "A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial." *Id.* To the contrary, "under *McDonnell Douglas,* the plaintiff first must establish a *prima facie* case of discrimination. . . then the burden of

production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for discharging the employee." *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009). If the employer provides a valid justification for the adverse employment action, the burden shifts once again, and the employee must show that the employer's reason is merely pretext for discrimination. *See id.*

"At the summary judgment stage, the issue is whether the plaintiff has sufficient evidence that unlawful discrimination was a motivating factor in the defendant's adverse employment action. If so, the presence of additional legitimate motives will not entitle the defendant to summary judgment." *Griffith*, 387 F.3d at 735. Therefore, to survive Defendants motion for summary judgment, Plaintiff must present direct evidence of discrimination, or identify specific facts that sufficiently support the claim that her sex or religion motivated Defendants decision to not renew her contract. *See Ricci v. DeStefano,* 557 U.S. 557, 577 (2009); *see also Grant v. City of Blytheville, Ark.,* 841 F.3d 767, 773 (8th Cir. 2016).

### i. Plaintiff Cannot Establish a *Prima facie* Case of Discrimination on the Basis of Sex.

The record is devoid of any direct evidence that shows Defendants decision not to renew Plaintiff's contract was because of her sex. Plaintiff has not, and cannot, tie the non-renewal of her contract to any negative animus related to her sex. The sole evidence Plaintiff presents to support her sex discrimination claim has been discussed *supra* in § II.B.a.  Plaintiff relies on this fact alone to conclude that her contract was not renewed because of her sex. Hence, Plaintiff has no direct evidence of sex discrimination. *See, e.g., Pospisil v. O'Reilly Automotive, Inc.,* 619 F. Supp. 2d 614, 625 (N.D. Iowa 2007) ("Direct evidence might include 'proof of an admission that gender was the reason for an action, discriminatory references to the particular employee in a work

context, or stated hostility to women being in the workplace at all.'" (quoting *Kerns v. Capital Graphics, Inc.,* 178 F.3d 1011, 1017 (8th Cir.1999)).

Plaintiff is required to establish a *prima facie* case of sex discrimination to prevail on summary judgment. *See Shannon v. Ford Motor Co.,* 72 F.3d 678, 682 (8th Cir. 1996) ("[T]he *McDonnell Douglas* framework exists to provide discrimination plaintiffs a way to prove their case when they do *not* have 'explicit, inculpatory evidence of discriminatory intent.'" (citation omitted)). Under the *McDonnell Douglas* framework, Plaintiff cannot survive summary judgment because she fails to generate a "genuine issue for trial on the ultimate question of sex discrimination." *McCullough,* 559 F.3d at 861. The relevant inquiry is whether the record contains evidence that sufficiently leads to an inference of discrimination based on Plaintiff's sex. *See Terry v. G4S Secure Solutions (USA) Inc.,* 366 F. Supp. 3d 1060, 1066 (E.D. Ark. 2019). Plaintiff cannot present any evidence that sufficiently establishes an inference of sex discrimination because such evidence does not exist in the record.

The entirety of Plaintiff's evidence is a paltry statistical disparity in contract renewals between her male and female colleagues in a five (5) physician department (within a hospital that employs hundreds of women). Standing alone, statistical evidence—even when it is much stronger than the disparity upon which Plaintiff relies—is insufficient to establish an individual plaintiff's *prima facie* case of intentional discrimination. *See, e.g., Hazelwood Sch. Dist. v. U.S.*, 433 U.S. 299, 307–08 (1977) ("Where *gross statistical disparities* can be shown, they alone may in a proper case constitute *prima facie* proof of *a pattern or practice of discrimination*." (emphasis added)); *see also Woodard v. Lehman*, 717 F.2d 909, 922 n.5 (4th Cir. 1983) ("[S]tatistical evidence might have been important in resolving a claim of discrimination in hiring, but it plainly was not pertinent to charges of individual acts of discrimination against employees already employed."); *Taylor v.*

*Sec'y of the Army*, 583 F. Supp. 1503, 1509 (D. Md. 1984) ("[A] plaintiff may not avoid his burden of proving each of the separate elements of a *prima facie* case by relying merely on statistical evidence which purportedly establishes a pattern-and-practice of [intentional] discrimination.").

In *King v. Yellow Freight Systems, Inc.*, the 8th Circuit affirmed judgment in favor of a defendant-employer upon concluding the district court properly "held that [the plaintiff] had failed to prove that he had been discriminated against because of his race." 523 F.2d 879, 881 (8th Cir. 1975). In that case, the plaintiff claimed he was wrongfully terminated because of his race and primarily relied on statistical evidence showing disparities in the racial composition of the defendant's employees. *See id.* In rejecting the plaintiff's arguments on appeal, the 8th Circuit specifically noted that statistical evidence cannot be used to prove individual claims of racial discrimination outside the context of a class action, concluding that: "Although statistical evidence of a pattern or practice of discrimination is of probative value in an individual discrimination case for the purpose of showing motive, intent, or purpose, it is not determinative of an employer's reason for the action taken against the individual grievant." *Id.* at 882 (internal citations omitted).

Here, Plaintiff's statistical "evidence" certainly does not allow a factfinder to draw a legitimate inference of sex discrimination. *See Tyler v. Univ. of Ark. Bd. of Trustees*, 628 F.3d 980, 990 (8th Cir. 2011) (explaining that statistical evidence from a small sample size, such as six or ten individuals, does not support an inference of discriminatory intent); *see also Harper v. Trans World Airlines, Inc.,* 525 F.2d 409, 412 (8th Cir. 1975) (stating that "statistical evidence derived from an extremely small universe ... has little predictive value and must be disregarded"); *Tinker v. Sears, Roebuck, & Co.*, 127 F.3d 519 (6th Cir. 1997) (finding employee's statistical evidence insufficient because sample included only 13 employees); *Wheeler v. City of Columbus, Miss.*, 686 F.2d 1144, 1151 (5th Cir. 1982) ("[S]tatistical evidence of discrimination is often irrelevant or

lacking in probative value when the sample group is small."). "[I]n order for statistical evidence to create an inference of discrimination, the statistics must show a significant disparity and eliminate nondiscriminatory explanations for the disparity. In other words, a plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals." *Fallis v. Kerr–McGee Corp*., 944 F.2d 743, 746 (10th Cir. 1991) (emphasis in original). Thus, in the absence of any evidence connecting this small statistical disparity to Defendants discriminatory intent, sex discrimination cannot be reasonably inferred from Plaintiff's mere suspicions regarding Defendants potential motive. *See Godfrey,* 962 N.W.2d at 102 ("An inference is not legitimate if it is based upon suspicion, speculation, conjecture, surmise, or fallacious reasoning.").

Furthermore, the record contains evidence that directly contradicts Plaintiff's allegations by the same method of proof that Plaintiff uses to support her claim. At any given time, there are substantially more women than men employed by MHP. For example, in 2021, 425 of the total 513 employees at MHP were female, and of the 55 physicians and advance practice providers, 30 were female and 25 were male. SOF ¶ 26. What's more, the alleged statistical disparity upon which Plaintiff's speculations are founded actually *refutes* any inference of sex discrimination. There were only five emergency room physicians employed by MHP when Plaintiff's contract was not renewed, four of whom were women. SOF ¶ 5. It follows basic common sense that all three physicians not retained by MHP were women, given that women comprised 80% of the employees holding the position. Plaintiff's assertion that this "statistical disparity" provides evidence of sex discrimination is simply illogical. Indeed, if MHP had fired the only male emergency room physician in a hospital staffed by an overwhelming majority of women, the resulting statistical

disparity would be objectively more "suspicious," to the extent that numerical imbalances between male and female employees at MHP bears any relevance to the issue at all.

Notably, among the three female emergency room physicians whose contracts were not renewed, Plaintiff is the only one no longer employed by MHP. SOF ¶¶ 55, 56.  Both Dr. DeJong and Dr. Life continue to work within MHP today, the former of whom holds the same position as an emergency room physician. Dr. Life, an internist by training, now works in occupational health medicine at MHP, but her transition between different departments did not involve any period of separation with MHP. Accordingly, Plaintiff is the only employee of MHP in the emergency department in 2021 who suffered an adverse employment action as a result of any notice of contract non-renewal in 2021. SOF ¶¶ 55, 56.  The foregoing undisputed facts show that MHP's decision not to renew Plaintiff's employment contract was in no way motivated by sex discrimination but are instead a reflection of internal concerns related to Plaintiff, individually and specifically. Plaintiff is unable to establish that the circumstances surrounding the decision to not-renew her contract gave rise to an inference of discrimination on the basis of sex and thus she is unable to establish a *prima facie* claim of the same.

### ii.    Plaintiff Cannot Establish a *Prima facie* Case of Discrimination on the Basis of Religion.

Like Plaintiff's sex discrimination claim, her religious discrimination claim asserts a "disparate treatment" theory of liability. *See Cole v. Grp. Health Plan, Inc.,* 105 F.4th 1110, 1113 (8th Cir. 2024) (noting that religious discrimination claims are "also known as 'disparate treatment'" under Title VII). For purposes of Title VII enforcement, "[t]he word 'religion' is defined to 'includ[e] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to' a 'religious observance or practice without undue hardship on the conduct of the employer's business.'" *Abercrombie &*

*Fitch,* 575 U.S. at 771–72 (quoting 42 U.S.C § 2000e(j)) (alteration in original). This statutory definition creates two distinct claims under Title VII: (1) intentional religious discrimination, and; (2) an employer's failure to reasonably accommodate an employee's religion. *See Sturgill v. United Parcel Service, Inc.,* 512 F.3d 1024, 1034 (8th Cir. 2008).

Without repeating here, Plaintiff's "evidence" in support of her discrimination on the basis of religion claim is discussed in § II.B.b *supra.* Plaintiff has no direct evidence to support her claim. As a result, Plaintiff must establish a *prima facie* case of religious discrimination through circumstantial evidence to survive summary judgment.

"To establish a *prima facie* case of religious discrimination, a plaintiff must show: (1) she is a member of a protected class because of her religious beliefs, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." *Shirrell v. St. Francis Med. Ctr.,* 793 F.3d 881, 887 (8th Cir. 2015). "Circumstances giving rise to an inference of discrimination include treating similarly situated employees who are not members of the protected class in a different manner." *Id.* Plaintiff's claim fails as a matter of law because she cannot point to any specific facts surrounding the non-renewal of her contract that give rise to an inference of religious discrimination.

Plaintiff fails to present any evidence that would allow a finder of fact to draw any inference (legitimate or otherwise) of religious discrimination from the sole fact that she is an atheist whose employment contract was not renewed. In addressing the causation element, Courts have found that religious discrimination claims fail as a matter of law even in cases where the plaintiff's evidence was objectively stronger than the evidence that Plaintiff has presented. For example, in *Shirrell v. St. Francis Medical Center,* the Eighth Circuit concluded the circumstances surrounding

the plaintiff's termination by defendant hospital did not give rise to an inference of religious discrimination where the basis of plaintiff's claim was "one overhead, offhand remark not directed at [plaintiff]." 793 F.3d at 888. In *Shirrell,* the court noted that the plaintiff "identifies no similarly situated co-workers who were not part of her protected class and who were treated any differently than she was," nor present any evidence that "the ultimate decision maker in her discharge was biased against her." *Id.* at 887–888. Based on this evidence, the *Shirrell* court affirmed the district court's ruling granting summary judgment to the defendant hospital on the plaintiff's Title VII religious discrimination claim. *See id.*

In addition to presenting no evidence that raises an inference of religious discrimination based on the circumstances surrounding the non-renewal of her contract, the factual allegations upon which Plaintiff relies do not even plausibly state a claim for religious discrimination. Other courts have dismissed plaintiffs' complaints asserting religious discrimination claims for failing to plead facts which give rise to an inference of discrimination based on very similar alleged facts. *See Schmidt v. Blue Valley Cmty. Action,* 8:23CV39, 2023 WL 5174177, at *7 (D. Neb. Aug. 11, 2023) (concluding that plaintiff's complaint failed to state a Title VII religious discrimination claim upon which relief could be granted because plaintiff failed to "identify any similarly situated co-workers who were not part of his protected class who were treated differently than he was")*; see also Hudson v. Square, Inc.,* No. 4:20-CV-1294 RLW, 2021 WL 3404025, at *2 (E.D. Mo. Aug. 4, 2021) (granting defendant's motion to dismiss where complaint failed to allege "any facts that give rise to an inference of [religious] discrimination," because plaintiff "merely state[d] that he published a religious post on Facebook and that Defendant terminated him shortly thereafter," but did not claim that "Defendant treated non-Muslim employees differently or that Defendant was aware of his religious beliefs in the first place.").

Even where courts have found that a plaintiff has plausibly alleged a *prima facie* case of religious discrimination without establishing the existence of a similarly situated comparator, that conclusion was compelled by the lower standard applied in the earlier stages of proceedings. *See Norgren v. Minn. Dept. of Human Serv.,* 96 F.4th 1048, 1056 (8th Cir. 2024) ("The district court gave too much weight to whether Aaron established the existence of similarly situated comparators because courts generally do not inquire about comparators until the 'pretext stage' of the inquiry, which arises at summary judgment."). Furthermore, the existence of a comparator is still highly relevant to the court's analysis of religious discrimination claims at every stage of the proceedings. The failure to identify a similarly situated comparator is potentially detrimental to establishment of a *prima facie* case, especially where the entirety of Plaintiff's "evidence" is comprised of broad and sweeping allegations that her contract was not renewed because she is an atheist.

Since Plaintiff fails to sufficiently plead facts in her complaint which would entitle her to relief, it necessarily follows that she cannot point to any specific facts in evidence that raise a legitimate inference of religious discrimination. Therefore, Plaintiff cannot establish a *prima facie* case of religious discrimination and Defendants are entitled to summary judgment.

### iii. Plaintiff Cannot Show that Defendants' Legitimate, Non-Discriminatory Basis for Non-Renewal of Employment Contract Was a Pretext for Discrimination

Even if this Court finds that Plaintiff has established a *prima facie* case of discrimination based on her sex or religion, Defendants have satisfied the shifting burden to produce a legitimate, nondiscriminatory reason for the employment decision at issue. *See* § II.B.a *supra*. A plaintiff can prove pretext by "adducing enough admissible evidence to raise genuine doubt as to the legitimacy of [the defendant's] motive." *Myers v. Hog Slat, Inc.*, 55 F. Supp. 3d 1145, 1161 (N.D. Iowa 2014) (quoting *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 521 (8th Cir. 2010). Additionally, "[t]he showing of pretext necessary to survive summary judgment requires more than merely

discrediting an employer's asserted reasons for terminating an employee. A plaintiff must also demonstrate that the circumstances permit a reasonable inference of discriminatory animus." *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 470 (8th Cir. 2011) (quoting *Roeben v. BG Excelsior Ltd. P'ship*, 545 F.3d 639, 642 (8th Cir. 2008)).

The non-renewal of Plaintiff's contract was a business decision made by MHP on the basis of Plaintiff's performance and conduct in the emergency department, as well as the department's current needs, within the contractual right of the parties. *See* SOF ¶¶ 7, 18-21.  Courts have been reluctant to overturn business judgment decisions through their interpretation of pretext in discrimination claims. "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Banford v. Bd. of Regents of Univ. of Minn.*, 43 F.4th 896, 900 (8th Cir. 2022) (quoting *Canning v. Creighton Univ.*, 995 F.3d 603, 612 (8th Cir. 2021)).  For example, in *Haigh v. Gelita USA, Inc.*, the Eighth Circuit Court of Appeals was presented with an age discrimination claim where the plaintiff alleged that his employer's assertion he failed to meet expectations was pretext to discrimination. 632 F.3d at 470. In rejecting the plaintiff's claim, the court reasoned that it "may not second-guess an employer's personnel decisions, and we emphasize that employers are free to make their own business decisions, even inefficient ones, so long as they do not discriminate unlawfully." *Id.* (quoting *Hanebrink v. Brown Shoe Co.*, 110 F.3d 644, 646 (8th Cir. 1997)).

Plaintiff presents no evidence whatsoever that Defendants' legitimate reason for not renewing her contract was a pretext for discrimination. *See Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 514 (8th Cir. 2011). Plaintiff's failure to satisfy her burden is unsurprising, however, given the sheer lack of any evidence in the record to support finding pretext. *Cf. Young v. Warner–Jenkinson Co., Inc.,* 152 F.3d 1018, 1023–24 (8th Cir. 1998) (finding adequate evidence of pretext

where employer gave entirely different reasons for employment action at different times). For instance, there is no evidence that Defendant chose to renew the contract of another employee that similarly engaged in unprofessional conduct and demonstrated poor work performance like Plaintiff. *See Waaser v. Streit's Inc.*, 520 F. Supp. 2d 1370, 1380 (N.D. Fla. 2007) (granting defendant-employer's motion for summary judgment because evidence did not "raise a genuine issue of material fact that [plaintiff] was treated differently than other employees who engaged in similar conduct who were not atheists.").

### b. Under Title VII, Plaintiff's Retaliation Claim Fails as a Matter of Law.

Plaintiff asserts a retaliation claim under Title VII based on two alleged instances of retaliatory conduct by Defendants discussed below. Title VII prohibits employers from engaging in retaliatory conduct against their employees that have opposed, complained of, or sought remedies for, unlawful workplace discrimination. *See* 42 U.S.C. § 2000e–3(a). "Title VII's prohibition against retaliatory discrimination protects activities ranging from filing a complaint to expressing a belief that the employer has engaged in discriminatory practices." *Buettner*, 216 F.3d at 714. Retaliation claims do not require a plaintiff to "establish the conduct which she opposed was in fact discriminatory but rather must demonstrate a good faith, reasonable belief that the underlying challenged conduct violated the law." *Id.*

The United States Supreme Court has interpreted the antiretaliation provision as requiring "proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. Of Texas Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 352 (2013). Thus, the motivating-factor standard for proving causation in status-based discrimination claims is not the correct standard of proof for causation in retaliation claims, which cannot be proved by the lesser test applied to discrimination claims. *See id.* at 360 (concluding that "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful

retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").

"To defeat summary judgment on a retaliation claim, a plaintiff must produce either direct evidence of retaliation, or create an inference of retaliation under the *McDonnell Douglas* burden-shifting framework." *Young–Losee v. Graphic Packaging Int'l, Inc.,* 631 F.3d 909, 912 (8th Cir. 2011). "Direct evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse action was in retaliation for the protected conduct." *Id.* In the absence of direct evidence, the plaintiff must establish a "*prima facie* case of retaliation by showing that '(1) the plaintiff engaged in protected conduct, including opposition to an action prohibited by Title VII; (2) [he] was subjected to an adverse employment action, and (3) there is a causal nexus between the protected conduct and the adverse action.'" *Tyler,* 628 F.3d at 985 (quoting *Lewis v. Heartland Inns of Am., LLC,* 591 F.3d 1033, 1042 (8th Cir. 2010)). "In terms of the causal connection, the plaintiff must show that the protected conduct was a 'determinative—not merely motivating—factor in the employer's adverse employment decision.'" *Id.* (quoting *Van Horn v. Best Buy Stores, L.P.,* 526 F.3d 1144, 1148 (8th Cir. 2008)).

The heightened standard for proving causation in retaliation claims has led some courts to include "the defendant's knowledge of the protected activity" as an additional element of the *prima facie* case. *See Zann Kwan v. Andalex Group LLC,* 737 F.3d 834, 844 (2d Cir. 2013) ("[T]he plaintiff must establish a *prima facie* case of retaliation by showing 1) 'participation in a protected activity'; 2) the defendant's knowledge of the protected activity; 3) 'an adverse employment action'; and 4) 'a causal connection between the protected activity and the adverse employment action.'" (quoting *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir. 2005))). "If an

employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its action; if the employer does so, the burden shifts back to the employee to put forth evidence of pretext, the ultimate question being whether a prohibited reason, rather than the proffered reason, actually motivated the employer's action." *Pye v. Nu Aire, Inc.,* 641 F.3d 1011, 1021 (8th Cir. 2011) (quoting *Fercello v. County of Ramsey,* 612 F.3d 1069, 1077–78 (8th Cir. 2010)).

Plaintiff's retaliation claim fails as a matter of law as she cannot establish that she engaged in a protected activity, that she suffered an adverse employment action, that there is a causal connection between the two.

### i. Plaintiff Cannot Establish She Engaged in a Protected Activity

Plaintiff cannot establish that she engaged in a protected activity by "seeking legal advice and contacting the Iowa Freedom of Information Council to obtain the minutes from the Board of Trustees meeting" after she was informed about the non-renewal of her contract. For the same reasons stated in § II.B.c.i *supra*, this conduct does not constitute engagement in a protected activity. *See Walker v. Northview Village Nursing Ctr.*, No. 4:14CV2094HEA, 2017 WL 528317, at *7 (E.D. Mo. Feb. 9, 2017) ("Plaintiff cannot establish he engaged in protected activity simply by submitting that he made a vague, unsupported Complaint of discrimination after he was told he was being discharged."). Title VII's antiretaliation provision "qualifies both opposing an unlawful employment practice and participating in an investigation, proceeding, or hearing arising out of such a practice as protected activities." *Schoonover*, 492 F. Supp. 2d at 1151–52. Determining whether a plaintiff engaged in "protected activity" under the statute depends on whether the plaintiff's actions fall under the "opposition clause" or "participation clause" of the statute's antiretaliation provision. "So-called 'opposition clause' cases typically require proof that the plaintiff opposed an unlawful employment practice, and 'participation clause' cases typically

require retaliation for participation 'in any manner' in an 'investigation, proceeding, or hearing,' initiated by the EEOC or its designee." *Schoonover*, 492 F. Supp. 2d at 1152 (quoting 42 U.S.C. § 2000e–3(a)) (internal citation omitted). Plaintiff's claim based on this specific instance of alleged retaliation is based on "protected activity" that occurred prior to the initiation of any formal proceedings. Therefore, this claim must be analyzed as an "opposition clause" case.

The Eighth Circuit has "interpreted the 'opposition clause' broadly to protect an employee's opposition to employment practices eventually shown to be unlawful, as well as to employment practices that are not unlawful but which the employee opposed with a good faith, objectively reasonable belief that the practices were unlawful." *Id.* As a result, "success on an underlying discrimination claim is unnecessary to succeed on an opposition clause retaliation claim." *Id.* Nevertheless, to find retaliation in violation of Title VII under the opposition clause, "[a] plaintiff must have actually formulated a reasonable belief that unlawful activity was occurring for there to have been unlawful conduct to oppose." *Id.* at 1152–53. On that basis, "[i]t follows that workplace complaints untethered to conduct a reasonable person would believe to be violative of Title VII are not remediable through a retaliation claim." *Id.* at 1153. As previously stated by this Court, "[t]his rule is logical: An employer cannot intentionally retaliate against an employee who opposes a proposed unlawful employment practice if the employer cannot have known the employee was actually opposing an employment practice the employee believed was unlawful." *Id.* at 1154.

Plaintiff cannot establish a *prima facie* case of retaliation because the actions she identifies to support this claim do not constitute opposition to an unlawful employment activity and thus do not amount to engagement in statutorily protected activity. The evidence in the record strongly supports a finding that Defendants could not have known that Plaintiff was "actually opposing an

employment practice [she] believe[d] was unlawful," *id.,* by seeking legal advice and contacting

the Iowa Freedom of Information Council. What's more, Plaintiff has no evidence that Defendants

were even aware of her actions at the time she was notified of the suspension. Since Plaintiff cannot

show that her actions constituted "protected activity," she fails to establish a *prima facie* case of

retaliation, and her claim fails as a matter of law.

### ii.  Under Title VII Plaintiff Cannot Establish She Suffered an Adverse Employment Action

Even if Plaintiff could establish engagement in a protected activity, Plaintiff's claim for

retaliation still fails as a matter of law as she cannot show she suffered an adverse employment

action. Here, Plaintiff alleges two adverse employment actions as the basis for her retaliation

claim: (1) Her paid suspension from work, and (2) alleged Negative comments about Plaintiff

made to prospective employers.

Under Federal Law, and for reasons discussed infra, Plaintiff's suspension *with pay* does not

constitute an adverse employment action. *See Pulczinski v. Trinity Structural Towers, Inc.*, 691

F.3d 996, 1007–08 (8th Cir. 2012) (finding suspension of an employee with pay while employer

investigated employee's absence from work was not an adverse employment action); *see also

Singletary*, 423 F.3d at 891–892 (affirming summary judgment dismissal of plaintiff's retaliation

claim, holding that plaintiff did not suffer adverse employment action when he was placed on paid

administrative leave); *Garang*, 439 F. Supp. 3d at 1093 (reviewing caselaw and concluding that

"a short suspension, without any other aspect of employment being affected, does not appear to

threaten the type of significant employment-related harm that is needed for an adverse employment

action. On the other hand, a suspension without pay effectively decreases an employee's pay,

which looks similar to other adverse employment actions." (internal citation omitted)); *Ollberding

v. Goodwill Indus., Inc.*, No. 8:19CV400, 2022 WL 1734469, at *7 (D. Neb. Feb. 22, 2022)

(finding the plaintiff's paid suspension from work did not constitute materially adverse employment action under Title VII).

Similarly, Plaintiff's claim that Defendants made negative comments about her also does not constitute an adverse employment action.  Plaintiff cannot establish any comment that was made to any prospective employer nor tie any such negative comment to Defendants. SOF ¶ 50. Even if she could, such conduct would require a showing of false information that was material to the employer's employment decision to constitute an adverse action for the purposes of a retaliation claim. *See Attaie*, 2011 WL 843973, at *2  (stating that establishing retaliation claim based on a negative employment reference requires showing that false information was disseminated to prospective employer and the false information was material to prospective employer's hiring decision); *see also NGrime*, 2009 WL 382757, at *7 (concluding that plaintiff failed to show a "bad report" was given to prospective employers); *Griffin*, 653 F. Supp. 2d at 936 (finding plaintiff could not prove adverse employment action against her because she admitted the defendant only provided date of hire and job title to prospective employers).

### iii.  No Causal Connection Exists Between Plaintiff's Engagement in any Protected Activity and the Adverse Employment Action(s)

Even if Plaintiff's actions did constitute protected activity under Title VII, and she was able to establish that she suffered an adverse employment action, Plaintiff cannot establish a causal connection between her alleged actions and the work suspension nor any such interference with prospective employers because she has no evidence that Defendants were even aware of her participation in protected activity. Thus, her claim necessarily fails as a matter of law. While the defendant's knowledge is not a required element of the *prima facie* case for retaliation claims, establishing causation is extremely difficult if there is no evidence showing the defendant's had some knowledge of the protected activity, even if it was constructive knowledge. *See Manning v.*

*Chevron Chem. Co.,* 332 F.3d 874, 883 (5th Cir. 2003) (explaining that "to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity"). Whether such evidence exists is a critical inquiry for retaliation claims on summary judgment because plaintiffs' relying on circumstantial evidence to support their claims must present evidence sufficient to allow a jury to reasonably infer that the adverse employment action was caused by the employer's retaliatory motive. *See Zamora v. City of Houston,* 798 F.3d 326, 333 (5th Cir. 2015) (affirming denial of defendant's motion for judgment as a matter of law because the plaintiff presented evidence of his employer's awareness of his participation in protected activity, which allowed a jury to reasonably infer that his employer's actions were motivated by retaliatory animus).

Even if Plaintiff's evidence could establish a *prima facie* case of retaliation, she clearly could not meet her burden of proof at the pretext stage without any evidence that Defendants actually *knew* of the protected activity. In *Meinen v. Bi-State Development Agency,* the Eighth Circuit affirmed the district court's dismissal of the plaintiff's retaliation claim for failure to "plead sufficient facts to give rise to an inference of causation beyond mere speculation." 101 F.4th 947, 951 (8th Cir. 2024). In *Meinen,* the court found the facts alleged in the complaint were insufficient to allow a factfinder to infer that the defendant's explanation was merely a pretext for retaliation because "no facts are ever alleged that give rise to an inference of a retaliatory motive beyond temporal proximity." *Id.*

Applying the same reasoning in this case clearly reveals that Plaintiff's evidence falls far short of what is required to survive summary judgment. *See Wilson v. Ark. Dept. of Human Serv.,* 850 F.3d 368, 373 (8th Cir. 2017) ("Even at summary judgment, '[a] plaintiff can establish a causal connection between his complaints and an adverse action through circumstantial evidence, such

as the timing of the two events.'" (quoting *Turner v. Gonzales*, 421 F.3d 688, 696–97 (8th Cir. 2005))). Even the factual allegations in Plaintiff's Complaint, taken as truth, would not provide evidence sufficient for generating a genuine issue for trial because they do not even establish "temporal proximity" between the suspension and her protected activity in this context. As a result, Plaintiff cannot establish a causal connection giving rise to an inference of a retaliatory motive from the evidence in the record, which is necessary for surviving even at the motion to dismiss stage.

With respect Plaintiff's paid suspension, given the fact that Defendants provided a legitimate explanation for the suspension, Plaintiff cannot satisfy her burden at the pretext stage because there is no evidence whatsoever to indicate that Defendants knew of the protected activity. This explanation is sufficient to satisfy Defendants burden under *McDonnell Douglas,* which is simply a "burden of production that 'can involve no credibility assessment.'" *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). Once the employer clears this "low bar to hurdle," *id.,* that "burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the 'legitimate' reason is merely pretext for prohibited, retaliatory conduct." *Sierminski v. Transouth Fin. Corp.,* 216 F.3d 945, 950 (11th Cir. 2000). Based on the evidence contained in this record, Plaintiff clearly cannot meet this burden.

In addition to Plaintiff's failure to present any evidence that refutes Defendants' legitimate reasons for imposing her suspension from work, deposition testimony reveals that Plaintiff even *agrees* to most of the poor behavior detailed in the notice. The fact that Plaintiff was written up for these instances of unprofessionalism in the emergency department directly undermines any finding of pretext. The lack of contrary evidence, combined with Plaintiff's own admissions,

manifestly demonstrates that Plaintiff cannot survive summary judgment on this claim, regardless of whether she can establish a *prima facie* case. Therefore, Plaintiff's claim based on this instance of alleged retaliation fails as a matter of law and Defendants are entitled to summary judgment.

## **<u>CONCLUSION</u>**

Summary judgment is designed "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323–24. For all the reasons outlined herein, Plaintiff cannot generate a genuine issue of material fact that her contract was not renewed because Defendants discriminated against her on the basis of her sex nor her religion, nor that they engaged in any retaliatory activity on the basis of her sex. Plaintiff's claims must fail as a matter of law.

**WHEREFORE**, Defendants respectfully request that the Court enter an order granting summary judgment in favor of Defendants on all of Plaintiff's claims and for any other or further relief as the Court deems just and proper.

Stacie M. Codr, AT0001502
Abigail L. Wallace, AT0012801
FINLEY LAW FIRM, P.C.
699 Walnut Street, Suite 1700
Des Moines, IA 50309
Telephone: (515) 288-0145
Fax: (515) 288-2724
scodr@finleylaw.com
awallace@finleylaw.com
cc: fdavis@finleylaw.com
**ATTORNEYS FOR DEFENDANTS**
**MAHASKA HEALTH PARTNERSHIP and**
**KEVIN DERONDE**

Original filed.

Copy to:

Roxanne Conlin
Devin Kelly
ROXANNE CONLIN & ASSOCIATES, P.C.
3721 SW 61st Street, Suite C
Des Moines, IA 50321-2418
Phone: (515) 283-1111
Fax: (515) 282-0477
roxanne@roxanneconlinlaw.com
dkelly@roxanneconlinlaw.com
cc: dpalmer@roxanneconlinlaw.com
**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on January 31, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF electronic system, which will send notification of such filing to all attorneys and partis of record.

*/s/ Abigail Wallace*