IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| AMANDA MORENO, D.O.,<br><br>             Plaintiff,<br><br>vs.<br><br>MAHASKA HEALTH PARTNERSHIP and<br>KEVIN DERONDE,<br><br>             Defendants. | 4:23-cv-00121-SHL-SBJ<br><br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT** |

## I.    INTRODUCTION.

Plaintiff Amanda Moreno brings employment discrimination claims that rest heavily on putative statements made by Defendant Kevin DeRonde about terminating her due to her atheism and not wanting to hire women. Because evidence of those statements is likely to be admissible at trial, and because the Court must presume for purposes of summary judgment that DeRonde in fact made them, Moreno has presented sufficient evidence to withstand summary judgment on her sex and religious discrimination claims. The Court therefore DENIES Defendants' Motion for Summary Judgment (ECF 74) as to those claims. The Court GRANTS Defendants' Motion for Summary Judgment as to Moreno's retaliation claim.

## II.    BACKGROUND.[1]

Moreno was employed with Defendant Mahaska Health Partnership ("MHP") as an emergency room physician pursuant to a Professional Employment Agreement (the "Agreement"). (ECF 95-2, ¶ 1.) The original term of the Agreement ended on December 31, 2019, but it automatically renewed for twelve (12) month periods thereafter. (Id., ¶ 2.) Each party had the right to terminate the Agreement without cause upon ninety days' advance written notice to the other side. (Id., ¶ 3.) On October 1, 2021, MHP provided a written Notice of Termination to Moreno stating that MHP intended to terminate the Agreement effective December 31, 2021. (Id., ¶ 4.) The decision to terminate Moreno was made by DeRonde, MHP's Chief Executive Officer ("CEO"). (Id., ¶ 6.) It does not appear that DeRonde was involved in the original decision to hire Moreno at MHP, but he did raise her salary by $80,000 shortly after he became CEO in 2018. (Id., ¶¶ 12, 14.)

---

[1] On a motion for summary judgment, the Court resolves all disputed facts and draws all reasonable inferences in favor of Moreno, the non-moving party. *See Rorie v. United Parcel Serv., Inc.*, 151 F.3d 757, 760 (8th Cir. 1998).

According to DeRonde, he made the decision to terminate Moreno in late 2021 based on deficiencies in her performance and the needs of the emergency department. (Id., ¶ 8.) Moreno asserts, however, that this was pretext for sex and religious discrimination. (Id.)

There were four other physicians in the MHP emergency department as of October 1, 2021: Dr. Deb DeJong (female), Dr. Kymberly Life (female), Dr. David Cornelder (male), and Dr. Suzy Roefer (female). (Id., ¶ 5.) In addition to Moreno, the other three female emergency department physicians were slated to be removed in 2021; however, two of them—Drs. DeJong and Life—continued working for MHP in some alternative capacity in the ensuing years. (Id., ¶¶ 26, 55–57; ECF 95-1, pp. 3–4.) According to Sarah Dickey, MHP's former Human Resources Director, there was a "plan" beginning in spring 2021 to remove the four female physicians from the emergency department, with the plan shifting from terminating them "for cause" to terminating them without cause by terminating or declining to renew their contracts. (ECF 95-3, ¶¶ 1–5.) According to Dickey, there was little or no documentation to support the termination of the female emergency room physicians for cause. (Id., ¶ 4.) Although neither party says so directly in their respective statements of fact, it appears to be undisputed that Dr. Cornelder did not receive a notice of termination or non-renewal of his contract. Dr. Cornelder served as Medical Director in the emergency department pursuant to a contract that commenced on March 2, 2020, and is not subject to renewal until December 31, 2025. (ECF 95-2, ¶¶ 9–11.)

MHP emergency department physicians received yearly bonuses based on whether they achieved performance-based quality metrics, including: (1) having fewer than 2% of patients leave without being seen; (2) attaining patient satisfaction scores above 58%; and (3) completing 100% of their required documentation. (See id., ¶¶ 15–16.) Defendants allege that for the calendar years 2019 through 2021, Moreno did not achieve the quality metric bonus in all three categories. (Id., ¶ 17.) More specifically, in 2019, she did not achieve the quality metric in any category; in 2020, she achieved the quality metric in only one category (patients who left without being seen); and in 2021, she achieved the quality metric in two categories (all but patient satisfaction). (See id., ¶¶ 18–20; ECF 74-2, pp. 71–73.) Dr. Cornelder also failed to attain the quality metric bonus in one of three categories in 2020 and 2022, although he achieved all three categories in 2021. (ECF 98-2, ¶¶ 36–37.) A different male doctor, Dr. Matt Whitis, failed to meet the quality metric bonus in five of six categories in 2018 and two of three categories in 2019. (Id., ¶¶ 34–35.) He was not, however, employed by MHP after 2019. (Id.)

Moreno asserts, in any event, that she was never shown the quality metrics between 2019 and 2021 and received bonuses during that time. (ECF 95-2, ¶ 17.) On August 5, 2019, Moreno specifically requested a performance evaluation, but none was provided, nor is there any documentation from in-person meetings to discuss performance issues. (ECF 98-2, ¶¶ 8–11.) Moreno was also never placed on a performance improvement plan while at MHP. (Id., ¶ 12.)

The parties dispute whether MHP as a whole lost money in 2021, although it appears to be undisputed that the emergency department lost money. (See ECF 95-1, p. 16; ECF 95-2, ¶ 24.) In 2021, thirty of the fifty-five physicians and "advanced practice providers" at MHP were women, although Moreno points out that MHP terminated (or did not renew) the contracts of four female emergency room physicians that year and asserts that "many of the midlevel provider positions are traditionally held by women." (ECF 95-2, ¶ 26.)

The parties dispute other issues regarding Moreno's performance as well. Defendants allege, for example, that Moreno used profanity in the emergency department and sent patients home without being seen. (Id., ¶¶ 21.d, f.) Moreno, by contrast, says "profanity was commonly used in the emergency department by many personnel" and that "all of the emergency room physicians had issues with patients leaving without being seen." (Id.) Defendants also assert that Moreno brought penis and testicle cookies into the emergency department, which Moreno admits but says was done only because someone "ordered them." (Id., ¶ 21.a.) Defendants also present evidence that Moreno made derogatory comments about patients, "had issues with integrity with other physicians," was the subject of a patient complaint, and was allegedly seen on the Internet when patients needed care. (Id., ¶¶ 21.b–c, e, g.) Moreno largely denies these allegations or provides relevant context, such as pointing out that the "patient complaint" was from a single event with a single patient more than two years before her contract was terminated. (Id.) Finally, Defendants present evidence that Moreno was the subject of disciplinary action by the Iowa Board of Medicine in 2009, which Moreno admits but says was disclosed to MHP when it hired her years later. (Id., ¶¶ 22–23.)

On October 10, 2021, then-MHP Board Members Jim Hansen and Margaret Ratcliff met personally with two of the other female emergency room physicians whose contracts were not renewed, Drs. DeJong and Life. (ECF 98-2, ¶ 38.) Both said DeRonde has a problem with female physicians and there is a "Boys Club" at MHP. (Id.) On October 11, 2021, female physician Dr. Lisa Ruckman told Board Members she felt "undertones" of "male chauvinism" from DeRonde

and Dr. Timothy Breon, MHP's Chief Medical Officer. (Id., ¶¶ 16, 39.) Moreno presents other evidence—largely through Dickey—of other instances in which DeRonde or Breon engaged in arguably sexist behavior, such as DeRonde referring to a female employee as "super high drama" and choosing to reprimand women but not men for engaging in angry or aggressive behavior toward colleagues. (Id., ¶¶ 41–42.)

Dickey told Hansen that she believed the elimination of the female emergency room physicians was discriminatory. (Id., ¶ 47.) Dickey also said she warned DeRonde against taking adverse employment action against those physicians, although DeRonde disputes this. (Id., ¶ 48.) Dickey said the removal of those physicians "felt discriminatory" and told MHP's legal counsel, Stacie Codr, that she believed DeRonde was sexist. (Id., ¶¶ 49–50.) According to Dickey, Chief Nursing Officer Andrea Hagist quoted DeRonde as saying that MHP would only be hiring males in the future; however, Hagist herself did not testify to this effect. (Id., ¶ 51.) After MHP announced the termination (or non-renewal) of the female emergency room physicians, three Board Members resigned via letter stating that "all employees no matter what their age, gender, race or religion should be treated fairly and procedures and policies should also be followed." (Id., ¶ 53.) According to Hansen, the letter reflected these Board Members' concerns about DeRonde's management, such as his "record of terminating women in bulk from the hospital." (Id.)

Moreno's religious discrimination claims revolve around her atheism. (ECF 95-1, p. 7; ECF 95-2, ¶ 36.) DeRonde and Breon both hold Christian-based religious beliefs that are very important to them. (ECF 98-2, ¶¶ 15–16.) In 2020, according to Dickey, Breon said MHP would become a "Christian organization." (Id., ¶ 23.) Breon would also pray with his patients in some circumstances. (Id., ¶ 29.) In September 2021—the month before Moreno received the notice of termination—Breon and DeRonde had a text message exchange about a religious convocation at Liberty University, with Breon saying, "This is why we are doing what we do. We are called to serve where we are at. At mahaska health, for our community, for Gods glory." (Id., ¶ 27.) The following month, on October 18, 2021—about two weeks after the notice of termination was sent to Moreno—Breon and DeRonde again shared a private text message exchange about a Liberty University convocation, with Breon making the comment, "Outlast them all!" (Id., ¶ 28.) In November 2021, at an MHP leadership development meeting, DeRonde and Breon made comments about MHP doing God's work in the community or words to similar effect. (Id., ¶ 32.)

4

Moreno testified at her deposition that she personally has no evidence of DeRonde or other MHP executives or Board Members being aware of her atheism during her employment. (ECF 95-2, ¶¶ 38–39.) She also testified that she did not overhear inappropriate comments about religion or gender by any Defendant during her eight-year tenure at MHP between 2013 and 2021, nor did she make any complaints about discrimination during that time. (Id., ¶¶ 41–42, 47.) Nonetheless, Dickey said DeRonde was aware at least as early as 2020 that Moreno was atheist. (Id., ¶¶ 43–44.) In addition, Hagist and Michael Lange, MHP's Emergency Services Director, knew Moreno was an atheist while Moreno was employed with MHP. (ECF 98-2, ¶¶ 30–31.)

According to Dickey, DeRonde said during discussions about Moreno's contract that, as an atheist, Moreno did not fit MHP's "culture." (ECF 95-3, ¶¶ 20–22.) More specifically, Dickey stated that in 2020, DeRonde said "[Moreno] is an atheist and she doesn't fit our culture. We are trying to build an organization on Christian values." (ECF 96, p. 32.) Later, during discussions about terminating emergency room physicians, Dickey said DeRonde identified a handful of concerns about Moreno, including: "she was challenging to schedule, they all were. She did not fit our culture. She was an atheist. She didn't have Christian values. She was immature. She was unprofessional. Those are the things I recall being discussed about Dr. Moreno." (Id., p. 34.) DeRonde disputes making statements about religion and claimed in his deposition that he did not learn of Moreno's atheism until reading an article about this lawsuit in April 2023. (See ECF 98-2, ¶¶ 24–25.) However, he sent a text message to Breon in February 2022 saying Moreno was "broken" and suggesting she might "find Christ through this," which Moreno interprets to mean he already knew she was an atheist. (Id., ¶ 26; ECF 95-2, ¶ 44.) Dickey also testified, in any event, that she believed DeRonde and Breon thought the emergency department needed a "culture change." (ECF 95-2, ¶ 46.)

Whatever the reasons for terminating her contract, Moreno was still scheduled to work at MHP until December 31, 2021. (Id., ¶ 27.) However, on November 4, 2021, Moreno was walked out of the hospital and placed on paid suspension due to complaints about her behavior in the emergency department, which included alleged comments and behaviors about her commitment to her work. (Id., ¶¶ 28–33, 49.) DeRonde admitted, however, that these complaints had no impact on his decision more than one month earlier not to renew her contract. (Id.) Moreno was provided a written Performance Correction Notice on November 11, 2021. (Id., ¶ 34.) She received her full compensation until December 31, 2021. (Id., ¶ 35.)

On December 28, 2022, MHP received a "hold letter" from Dickey's counsel instructing MHP to keep emails, text messages, and similar materials for a separate case involving Dickey. (ECF 98-2, ¶ 43.) DeRonde received the letter but "did nothing" to preserve relevant materials. (Id., ¶¶ 44–45.) There is an approximate two-year gap (10/30/2019 to 10/17/21) of missing text messages from DeRonde's phone that he could not explain, nor could the messages be retrieved from cloud storage. (Id., ¶ 46.)

## III.    LEGAL STANDARDS.

### A.  Summary Judgment Standard.

Summary judgment is appropriate where, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Smith v. Ashland, Inc.*, 250 F.3d 1167, 1171 (8th Cir. 2001). "A fact is material if it 'might affect the outcome of the suit.'" *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248).

### B.  Employment Discrimination Standards.

Moreno brings claims for sex and religious discrimination under the Iowa Civil Rights Act (Iowa Code Chapter 216) and Title VII of the Civil Rights Act of 1964.[2] Those claims are generally evaluated under the same framework. *See Garang v. Smithfield Farmland Corp.*, 439 F. Supp. 3d 1073, 1097 (N.D. Iowa 2020); *Rooney v. Rock-Tenn Converting Co.*, 200 F. Supp. 3d 816, 820 (W.D. Ark. 2016), *aff'd*, 878 F.3d 1111 (8th Cir. 2018). Moreno may survive summary judgment by providing direct evidence of discrimination based on protected status. *See Mayorga v. Marsden Bldg. Maint. LLC*, 55 F.4th 1155, 1161 (8th Cir. 2022). In the absence of direct evidence, "the plaintiff may establish an inference of discrimination . . . under the burden-shifting framework provided by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Anderson v. KAR Glob.*, 78 F.4th 1031, 1036 (8th Cir. 2023).

In a sex or religious discrimination claim, a plaintiff must first establish a prima facie case by showing that: "(1) she was a member of the protected group; (2) she was qualified to perform

---

[2] Moreno also brought retaliation claims under state and federal law but does not oppose dismissal of those claims. (ECF 95, ¶ 3.)

the job; (3) she suffered an adverse employment action; and (4) circumstances permit an inference of discrimination." *Bell v. Baptist Health*, 60 F.4th 1198, 1203 (8th Cir. 2023); *see Jackson v. Lew*, 242 F. Supp. 3d 850, 864 (W.D. Mo. 2017) (quoting *Huynh v. U.S. Dep't of Transp.*, 794 F.3d 952, 958 (8th Cir. 2015)). "If the plaintiff succeeds [in establishing a prima facie case], the burden shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for the adverse employment action." *Gibson v. Concrete Equip. Co.*, 960 F.3d 1057, 1062 (8th Cir. 2020). "If the defendant rebuts the presumption, the burden shifts back to the plaintiff to demonstrate that the proffered non-discriminatory reason is pretextual." *Id.*

## IV.    LEGAL ANALYSIS.

> *A. Defendants Are Not Entitled to Summary Judgment on Moreno's Religious Discrimination Claim.*

Defendants do not dispute that Moreno satisfies the first three elements for a religious discrimination claim: (1) she was a member of the protected group; (2) she was qualified to perform her job; and (3) she suffered an adverse employment action. *See Bell*, 60 F.4th at 1203. Defendants do, however, dispute the fourth element. Thus, to survive summary judgment on her sex discrimination claim, Moreno must establish sufficient facts—viewed in the light most favorable to her—to allow a reasonable juror to conclude that "circumstances permit an inference of discrimination" in connection with her termination. *Id.*

Moreno has satisfied this burden through direct evidence, i.e., "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004). Dickey, MHP's former Human Resources Director, testified that during discussions about Moreno's contract, DeRonde said Moreno "is an atheist and she doesn't fit our culture. We are trying to build an organization on Christian values." Later, as part discussions about terminating or not renewing the contracts of Moreno and other emergency room physicians, Dickey reiterated that DeRonde said Moreno "did not fit our culture. She was an atheist. She didn't have Christian values." Given that (i) DeRonde, as CEO, was the decisionmaker at MHP, and (ii) Moreno was indeed terminated following the discussions in which DeRonde allegedly made comments about religion, Dickey's testimony is direct evidence of discrimination that, if found credible, would allow a reasonable juror to conclude that DeRonde terminated Moreno's contract because of religion in violation of Title VII and the Iowa Civil Rights Act. *See Simmons v. New Pub. Sch. Dist. No. Eight*, 251 F.3d

1210, 1215 (8th Cir. 2001) (holding that school board president's statement that the plaintiff was "a woman in a man's job" was direct evidence of discrimination), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc). It follows that Defendants are not entitled to summary judgment on Moreno's religious discrimination claim. *See id.* at 1218 (reversing entry of summary judgment for defendant).

Granted, a reasonable juror may decide Dickey's testimony is not credible given, among other things: she has a lawsuit of her own pending against MHP; no other witnesses claim to have heard the same comment from DeRonde; and Moreno herself is unable to identify any comments about atheism during her tenure. The problem for Defendants, however, is that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

The Court further rejects Defendants' argument that Moreno has not established close enough temporal proximity between DeRonde's alleged statements about Moreno's atheism and the decision to terminate her contract. This, again, is a jury question. According to Dickey, DeRonde's comments about Moreno's atheism occurred in the midst of discussions about why she needed to be terminated, following which she was indeed terminated. This is enough to allow a reasonable juror to conclude religion was a motivating factor in the adverse employment decision. *See Russell v. City of Kansas City*, 414 F.3d 863, 866 (8th Cir. 2005).

B. *Defendants Are Not Entitled to Summary Judgment on Moreno's Sex Discrimination Claim.*

As with Moreno's religious discrimination claim, Defendants do not dispute that Moreno satisfies the first three elements of a claim for sex discrimination. The analysis of the fourth element—whether circumstances permit an inference of discrimination—revolves around an evidentiary question. Moreno argues that she has presented direct evidence of discrimination in the form of a statement purportedly made by DeRonde about how MHP would by hiring only males in the future. (ECF 95-1, p. 18.) If admissible, this statement would constitute direct evidence of discrimination. *See Griffith*, 387 F.3d at 736. But there is a dispute about admissibility because Moreno is relying on testimony from Dickey about what Dickey was allegedly told by Hagist about the alleged comment by DeRonde. In other words, there are two layers of hearsay at play: DeRonde's alleged statement to Hagist, and Hagist's alleged statement to Dickey. For her

part, Hagist apparently[3] denies that DeRonde ever made a comment about MHP not hiring women, as does DeRonde. (*See* ECF 98-2, ¶ 51.)

"The district court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial." *Smith v. Kilgore*, 926 F.3d 479, 485 (8th Cir. 2019). "[T]he standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be presented at trial in an admissible form." *Id.* (alteration in original). "Though parties may identify evidence at summary judgment that would be inadmissible at trial, they must demonstrate that the evidence may be offered at trial in an admissible form." *Id.*

Here, because Hagist herself presumably will not testify that DeRonde made the purported comment about MHP not hiring women, Moreno needs to establish the admissibility of two separate statements: (1) DeRonde's alleged statement to Hagist; and (2) Hagist's alleged statement to Dickey recounting what DeRonde allegedly said to Hagist. The first is admissible as non-hearsay pursuant to Federal Rule of Evidence 801(d)(2) because DeRonde's statements are statements by a party-opponent. As to himself personally as a Defendant, he is literally the party; as to MHP as a Defendant, his position as CEO gives him authority to make decisions on employment matters, and thus his statements about those matters clearly fall within the scope of the authority given to him by MHP. *See, e.g.*, *EEOC v. HBE Corp.*, 135 F.3d 543, 552 (8th Cir. 1998) (holding that district court properly admitted statements purportedly made by manager about employment decisions pursuant to Rule 801(d)(2)).

Hagist's alleged statement to Dickey about what DeRonde said is also reasonably likely to be admissible. The record contains minimal information about Hagist's responsibilities as Chief Nursing Officer, but her title in and of itself suggests a sufficient level of seniority and authority to indicate that her statement to Dickey (the Human Resources Director) about possible discrimination in the emergency department or elsewhere at MHP was within the scope of her authority. *See id.* (holding that district court properly admitted statements purportedly made by manager even when they came in through multiple declarants because the test for double hearsay was satisfied). Accordingly, the Court will take Hagist's alleged statement to Dickey into account

---

[3] Defendants cite to Hagist's deposition transcript but inadvertently failed to include the relevant portion of the deposition itself in the appendix. (*See* ECF 98-1 (providing a table of contents for a supplemental appendix but not the pages).) The Court therefore cannot tell if Hagist unequivocally denied that DeRonde ever made such a comment or merely said she could not remember him doing so. For present purposes, the distinction is immaterial.

in deciding whether summary judgment is appropriate. *See Gonnerman v. McHan Constr., Inc.*, 520 F. Supp. 2d 1095, 1108 (N.D. Iowa 2007) (considering alleged statement by decisionmaker at summary judgment stage in employment discrimination case despite double hearsay).

If believed by a jury—which, at this stage, the Court must presume—Dickey's testimony about Hagist's statement regarding DeRonde only wanting to hire men is direct evidence of discrimination. *See Simmons*, 251 F.3d at 1215. Given that the statement appears to have been made in connection with the decision to terminate the contracts of Moreno and the other female physicians in the emergency department, it is enough to make it unnecessary to analyze Moreno's claim through the *McDonnell-Douglas* burden-shifting framework. She is entitled to trial. *See id.*

There are, again, legitimate reasons a juror might not find Dickey's testimony credible as it relates to DeRonde's alleged statement about not hiring women. Indeed, Dickey's testimony is apparently contradicted by both DeRonde (the original speaker) and Hagist (the conduit), thus making it even more questionable than her testimony about DeRonde's alleged statement about Moreno's atheism—which Dickey at least says she heard for herself. Again, however, it is the jury's role to weigh the evidence, not the Court's. *See Torgerson*, 643 F.3d at 1042.

To the extent the Court must analyze Moreno's sex discrimination claim under the *McDonnell-Douglas* burden-shifting analysis, the result would be the same: summary judgment must be denied. DeRonde's alleged statement about not hiring women arose in the midst of his decision to terminate all four female emergency department physicians but not the only male physician. This is enough to establish a *prima facie* case of discrimination. The same evidence also helps rebut MHP's position that it terminated Moreno for performance-related reasons—a position that is further weakened by MHP's refusal to share the performance evaluations with Moreno despite her request to see them and failure to place her on a performance improvement plan despite her alleged deficiencies. Finally, although the Court doubts the statements made by other female emergency room physicians to MHP Board Members about "male chauvinism" and the "Boys club" atmosphere will be admissible at trial, there is separate admissible evidence that bolsters Moreno's case, including inconsistencies in how MHP evaluated male and female physicians in the emergency department. These alleged inconsistencies would not be enough in and of themselves to allow Moreno's claim to survive summary judgment, but they are sufficient when combined with evidence of DeRonde's alleged statement about not hiring women and the

termination of all four female physicians in the emergency department to allow a reasonable juror to infer discrimination.

## V.    CONCLUSION.

The Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment. (ECF 74.) Moreno's state and federal religious discrimination and sex discrimination claims will proceed to trial. Her retaliation claim is dismissed.

**IT IS SO ORDERED.**

Dated this 28th day of April, 2025.

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE

11